Totten, Judge,
delivered tbe opinion of tbe court.
The plaintiffs bring their bill as administrators, “with tbe will annexed,” of William Snodgrass, deceased, to have tbe will construed, and the. rights of the devisees and legatees under tbe same, stated and declared. All persons having an interest in the subject, are made parties to tbe suit, and tbe chancellor has proceeded to .mate bis decree therein, from which decree, tbe “beirs of James Snodgrass ” have appealed to tbis court.
On tbe 11th May, 1842,.William Snodgrass made bis will: be died in September, 1849, and at tbe October term, 1849, of tbe county court of Sullivan, tbe will was duly proved, and tbe plaintiffs were appointed administrators, with tbe will annexed. In said will are the following clauses.
Sixth. “I give and bequeath in like manner, unto tbe beirs of my son, James Snodgrass, deceased, tbe two plantations whereon they now reside, with all tbe appur *22 tenances thereunto belonging, consisting of stock and farming utensils of every kind, and two wagons and five hundred dollars in cash, and six negroes out of them now on the plantation, to be left to a majority of my heirs, to select them out of the family now on the plantation, and the others to go to my other heirs equally divided.”
After other bequests, comes the clause as to the residue, to-wit:
“As the balance of my estate, if no failures in collection, will be a tolerable sum, it is my wish and desire that the overplush, after the bequests, be equally divided amongst all of my hews; giving Joel'Gillenwater’s children and John Fleming’s children, an equal part, or one share with my other heirs.” It is to be remembered that these are children of the testator’s daughter who was twice married. James Snodgrass, a son of the testator, died before the date of the will, and his children are William Snodgrass, Ellen, who married Geo. Hardin, and David, Mary, and Catharine Snodgrass, the three last being minors who defend by their guardian.
The bill charges that on the 22d May, 1849, the testator made sale of his lands in Sullivan county to Jacob Lyon, at the price of $4500, that the sale includes the lands devised to the “heirs of James Snodgrass, deceased, and is to that extent, a revocation of said will, and it insists upon a specific execution of the contract against Jacob Lyon.
Two papers containing said contract of sale are produced, and are as follows:
First. “Sullivan county, State of Tennessee, May 22d, 1849. Article of agreement made and entered into *23 between William Snodgrass, Sr., of Sullivan county, and State of Tennessee, of tbe one part, and Jacob Lyon, of Smith county, and State of Yirginia, of tbe other part, witnesseth: that said William has this day bargained and sold said Jacob, several tracts or parcels of land, all joining my old residence, also two tracts called tbe mill tracts, also the Jones’ tract, and one half the Cañóle and J. Snodgrass tract, which said William agrees to give possession against the first day of September, of the whole premises, except so much of the buildings as will suffice to save the present crop now on the land.”
" Teste: David Snodgrass, William Snodgrass,
Mary A. Lyon, Jacob Lyon.”
Second. “Title bond for several tracts or parcels of land given 22d May, 1849.
“ Sullimcm county, State of Tennessee — Know all men by these presents: That I, William Snodgrass, of Sullivan county, State of Tennessee, have this day bargained and sold to Jacob Lyon, of Smith county, Virginia, a certain parcel or tract of land, which I said William Snodgrass, bind myself to have said land surveyed and run out, and mate said Jacob Lyon a good warrantee deed, in consideration for which said Jacob Lyon, is to pay said William Snodgrass, four thousand five hundred dollars.”
Teste: David Snodgeass, William Snodgeass.”
Maey A. Lyon.
At the same date, Jacob Lyon executed his notes to William Snodgrass, for the purchase money, that is, one note for $3,000, and another for $1,500. In his answer, Jacob Lyon says, the lands and the title papers therefor, *24 were shown to Mm at the time of the contract. That the home plaee, called the “ old residence,” and the other tracts designated, were intended to be sold: offers to pay the purchase money, and insists upon a specific performance of the contract.
The plaintiff’s say they have reason to believe and so charge, that the land intended in one of said instruments, was the “home place of the testator, and that intended in the other, was the tract adjoining or contiguous thereto. The pa/rol proof makes it clear, that the home place was intended to be sold with the other tracts. The answer of the “heirs of James Snodgrass,” concurs in the belief that the “ home plaee ” was intended to be sold, with the other lands, that the lands devised to them, was the land intended to be sold.- That the object of the testator was to convert said lands into money for the use and benefit of said devisees, and to give the money to them, as they had concluded to remove from this State to Missouri; but the testator died before the fund was collected or delivered to them. They insist that said contract is void for vagueness and uncertainty, and resist its execution.
This case may be regarded in several points of view.
First: As to the effect of a sale of land by execu-tory contract, where the vendor by his will had previously devised the same. This was the case of Donohoo vs. Lea, 1 Swan’s R., 119, where the siibject is fully considered, and it is held, that such sale will operate as a revocation of the will pro tamdo. In the view of a court of equity, the nature of the estate is changed, the realty is converted into personalty — -the vendee is entitled to the land, and the vendor to the purchase money, *25 which has become a part of his personal estate. Walton vs. Walton, 7 J. C. R., 268.
Second. But to have this effect, the contract of sale must he such as a court of equity may, in view of well settled principles, specifically execute. It is true, that in the absence of any valid objection, it is a matter of course to decree the specific performance of a contract for the sale of real property. It is a higher and more perfect remedy than the damages, which a court of law can give for a breach of the contract. 9 Ves., 608. 12 Ves., 395. 4 Peter’s R., 311, 328.
As a general rule, “courts of equity will decree a specific performance, where the contract is in writdmg, cmd is certain, and is fair in all its parts, and is for an adequate consideration, and is capable of being performed; but not otherwise.” 2 Story’s Eq. Jur., 751. Denton vs. Stewart, 1 Cox Cathcart vs. Robeson, 5 Peter’s R., 264.
The contract must be in writing — be certain in its terms, and be signed by the party to be charged with its performance. The form of the instrument is perfectly immaterial, as the statute of frauds merely requires that the contract “ or some memorandum or note thereof shall be in writing.” But the written evidence of the con-; tract must be reasonably certain in itself, as to the es-' tate intended to be sold, and the terms of sale; as parol evidence to supply a writing defective in this respect is inadmissible. Patton vs. McClure, M. & Y. R., 333. Baily vs. Ogdens, 3 J. R., 419. 2 Greenleaf’s Cruise, title deed C. 3, and note. 1 Greenleaf’s Ev. S., 268. Parkhurst vs. Van Courtlandt, 1 J. C. R., 281.
RTor is it necessary that the contract should be con *26 tained in a single document. “It will be sufficient if it can be plainly made out, in all its terms from any writings of tire party, or even from his correspondence.”
Tlwrd. But when several papers are relied upon for written evidence of a sale of land — these papers must afford mtrmdo proof, that they relate to the same contract of sale. Parol evidence is inadmissible to connect them, or to show that they relate to the same transaction. This is a well settled rule under the statute of frauds.
Thus, says Chancellor Kent, (in Parkhurst vs. Van, Courtlandt, 1 J. C. R., 281,) “I am warranted in considering it a settled principle, that if the court cannot ascertain, with reasonable certainty, the terms of the agreement from the writing, or from some other paper to which it refers, the writing does not take the case out of the statute.” “ It appears to be equally well settled,” says the chancellor, in the same case, “that when the agreement is thus defective, it cannot be supplied by parol proof, for that would be at once to open the door to perjury, and to introduce all the mischiefs which the statute of frauds and perjuries was intended to prevent.” The cases to this point are numerous and decisive. Brodie vs. St. Paul, 1 Ves., 331. Clinan vs. Cook, 1 Scho. & Lef., 32. Boydell vs. Drummond, xi East, 156. Abeel vs. Radcliff, 13 J. R., 298.
Row to apply these principles to the present case; it is clear that we can only 'look to the written papers before referred to, for the nature and terms of the agreement between the parties; the parol evidence relied upon to supply these defects, must be kept entirely out of view.
*27 The first paper after stating a sale of land imperfectly-described, is wholly silent as to the price and terms of sale. The second paper mentions a “parcel of land,” to be surveyed and conveyed to the vendee for the price of four thousand five hundred dollars. No description whatever is given of the land intended to be sold.
-If these papers be taken separately, it is perfectly cleai-, that as contracts, they are void for vagueness and uncertainty.
Nor can they be taken and construed together as evidence of the same contract for the sale of land. Eor neither paper makes any reference to the other, nor contains other intrinsic evidence that it refers to the same subject matter or sale. So far as anything appears in the papers themselves, they relate to separate and distinct sales, and so indeed, the bill construes them, as we have seen.
From this view of the case it results, that the supposed sale of the land was merely void, and had no effect to revoke the previous devise, to the “heirs of James Snodgrass,” — that the devise remained in force and took effect at the testator’s death.
Fov/rth. As to the residuary clause of the will now before us. The testator gives the fund equally to all his hews; except, that Gillenwater’s children, and Fleming’s children, were to have an equal part or one share with his other hews. ¥e can have no doubt from the context, and other portions of the will, but that by the word heirs, the testator meant his children. He therefore specially provides that the children of his daughter shall be interested in this fund. He does not provide that the children of James Snodgrass shall take under *28 this clause, as in tlie other two cases, and therefore, we consider that they are excluded. They are not named, nor are they included in the general words of this clause.
Let the decree of the chancellor be modified.