ROBERT D. RYTHER *et al.* *v.* GEO. W. BLACKWELL *et al.*

(*Jackson.*   April Term, 1904.)

1. **HOMESTEAD.** Minors left here by parent going to another
State are entitled to the homestead.

Where a widower and father entitled to a homestead in his land
leaves the State, taking with him two of his minor children,
and leaving two minor children here, the minor children so left
are entitled to the homestead as against a purchaser at an
execution sale, or as against those claiming under such pur-
chaser.

Code cited and construed:   Secs. 3797 and 4770 (S.); secs. 2934
and 3755 (M. & V.); secs. 2112 and 3042 (T. & S. and 1858).

Acts cited and construed:   1867-68, ch. 85; 1870-71, ch. 71.

Constitution cited:   Art. 11, sec. 11.

Cases cited, distinguished and approved: Hicks v. Pepper, 1 Bax.,
42; Lankford v. Lewis, 9 Bax., 127; Carrigan v. Rowell, 96 Tenn.,
185; Farris v. Sipes, 99 Tenn., 298.

2. **SAME.** Same. Those entitled may recover, though others
joined in suit are not entitled to recover.

In a suit by four minor children to recover homestead, where
two of them are not entitled to same, because they were taken
with him by their father from the State, the other two left be-
hind may maintain the suit and recover the homestead to which
they are entitled.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.—
F. H. HEISKELL, Chancellor.

Ryther v. Blackwell.

DUVAL & LOVEJOY, for complainants.

SMITH & TREZEVANT, for defendants.

---

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

The bill in this case was filed by four infant children of George D. Ryther, deceased, setting up a homestead interest in a house and lot in Memphis, Tennessee, and alleging that one of the parties named as defendant, to wit, L. B. Eaton, was claiming title thereto, and possession thereof, under a deed, which, by mesne conveyances connected itself with a deed executed by the sheriff to one Malone, who purchased the same at a sale made by that officer by virtue of process issued upon judgments rendered against the father of these minors. The complainants asked that a decree be rendered declaring void the execution sale upon the ground that the twenty days' notice required by section 4770 of Shannon's Code had not been given to the execution debtor by the officer who made the sale, and also that Eaton be perpetually enjoined from interference with them and their right in said property.

The fact disclosed so far as it is necessary to a determination of the case are, that Geo. D. Ryther, the father of the minor complainants, owned and occupied the property in question as his home. Soon after the death of his wife and a few months before the execution sale referred to, he left the State of Tennessee for the State of Louisiana, taking with him two of his minor children.

The other two being of very tender years, he left in the care of one Mrs. McClure, and placed her, with these children, in possession of this home. In it he also left for their use the same furniture and domestic equipments that were there at the time of his wife's death and continuously thereafter to the day of his departure, which occurred some three or four years before the filing of the present bill. Since then he has not returned to this State, so far as this record discloses. Whether he was still living at the time of the institution of this suit does not appear. He was by profession a railroad contractor and in the pursuit of his business was frequently absent from Memphis for long periods of time, and, there are certain facts which came to light in the progress of the cause that would indicate he was alive at least a year or two before this litigation began.

Conceding that the children taken with him by the father, on his departure from this State, are without right, the question is, upon the facts hereinbefore set out, are the two minor complainants, who were left behind, entitled to homestead in his property, and if so, can they assert their claim in this cause? It is not necessary, in disposing of this question, to determine, as did the chancellor, that the execution sale under which Eaton claims was void. For even, if valid, and the two resident minor complainants were entitled to homestead, it would not be affected by the sale. That they were so entitled, we think an examination of the statutes will make clear.

Chapter 4 of title 2 of part 2 of the Code of 1858 is

entitled "Of exemptions and the homestead." Article 1 of this chapter is devoted to the exemption of certain articles of personal property to the head of a family from seizure under writs of attachment and execution. Section 2112 of the chapter then provides as follows: "Where a debtor absconds and leaves his family, such property shall be set apart for the use of the wife and family, and shall be exempt in the hands of the wife or children."

Beyond question, this section, by its terms, was confined to exempt personal property. It did not embrace homestead, as that was conferred, by the next succeeding article. That article secured to each head of a family, who should make a signed, written declaration of his purpose to claim it, followed by registration, a homestead of the value of five hundred dollars. To entitle one to the homestead, residence on the land so claimed was essential.

Subsequently chapter 85 of the acts of 1868 was passed, by which the value of the exempt homestead was raised to one thousand dollars, and two hundred and fifty dollars of personal property, in addition to that already allowed, was made exempt from attachment and execution.

Thus the statutes as to exemptions of personal property and of the homestead stood, until chapter 71 of the acts of 1870-71, was enacted on the 1st day of February, 1871. This is entitled, "An Act to amend the exemption laws, and to comprise them all in one act." By it the

legislature did exactly what its caption indicated.   The first three sections deal exclusively with the exemption of personal property.   Section 4 is as follows:

"Be it enacted that the homestead in the possession of each head of the family and the improvements thereon to the value in all, of one thousand dollars, shall be exempt from execution or attachment or sale under legal process. . . . ."

Section 5 provides "that all of said personal property and the homestead shall be exempt from seizure," etc., while section 6 is in the following words:   "Be it enacted further that when the debtor absconds or leaves his family the exempted property shall be set apart for the use of the wife and family and shall be exempt in the hands of the wife or children. . . ."   It is impossible in view of the purpose avowed in the caption of the act, upon any sound rule of construction to narrow the scope of section 6 to personal property.   The words used are, "exempted property."   To ascertain the meaning of these words we must look to the preceding sections of this act, and in doing so we find that they deal, as has been before stated, with personal property and the homestead.   Independent of the rules of construction which we think make it essential to give this latitude to these words, it would be singular if the legislature had carefully exempted to the wife or children of the debtor, who absconds or leaves his family, personal property that is soon consumed or worn out in the use, and had left unprotected, against the claims of creditors, the

Ryther v. Blackwell.

house or home which would give them shelter; and especially in view of the legislative intent, distinctly averred in the fourth section, "give effect to section 2 [11 was intended], article 11 of the constitution of 1870 which not only provided for a homestead, but secured it by guarantees.

It is true that the several annotators of the Code of 1858, in their various editions have left the section in question where it was placed by the framers of that Code. They have evidently failed to observe that this section was taken by the draftsman of ch. 71 of the Acts of 1870-71, and, with a few verbal changes, made section 6 of that act, and thereby given a scope and meaning which it did not originally have.

There is no conflict, as it assumed, between this view and the former holdings of this court. The case of *Hicks* v. *Pepper,* 1 Bax., 42, was that of a widowed mother who taking her infant son moved to and became a resident of Kentucky after the death of the husband and father, and it was held by this act that the homestead right was lost. In *Farris* v. *Sipes,* 99 Tenn., 298, the facts were that the husband and father moved with his family to the State of Texas, and, after living there with them for several years, died. Under these facts it was held that there was an abandonment of the Tennessee domicile, so as to deprive the widow and children of all right of homestead in this State. In *Carrigan* v. *Rowell,* 96 Tenn., 185, the rule announced in *Hicks* v. *Pepper,* supra, was applied to facts very similar to those in the latter case. None of these, and none to which our at-

tention is called, raise a construction of section 6 of ch. 71 of the Acts of 1870-71. In no one was the court called upon to determine what was the right of the wife or children as to the homestead, when the husband or father "either absconds or leaves his family." So far as we can discover, this question is here presented for the first time.

The case of *Lankford* v. *Lewis,* 9 Bax., 127, referred to by counsel for the defendant Eaton, involved a construction of the exemption act of 1868, already referred to. This contained no such provision as the one in question, and that case, therefore, affords no aid in arriving at the true meaning of the act which we are not considering.

We hold, therefore, that this bill is maintainable as to the two minor complainants and a decree will be entered in this court establishing their rights to homestead in the property described in the pleadings and the case will be remanded in order to settle the account of the receiver appointed in the court below, and that an account may be stated with and a decree be entered against L. B. Eaton, for all rents collected by him or which he might have collected while in possession of the property, and for such other orders and decrees as may be necessary and in conformity with this opinion.

This court reverses the decree of the chancellor, and pretermits altogether any holding as to the validity of the execution sale under which Eaton claims.

The costs of the cause will be paid by L. B. Eaton.