JOHNSON *v.* BROWDER *et al.*

(*Knoxville,* September Term, 1947.)

Opinion filed November 29, 1947.

Rehearing denied January 16, 1948.

602

McCANLESS & TAYLOR, of Morristown, and R. A. DAVIS, of Athens, for appellants.

JOHN R. KING, of Morristown, for appellees.

MR. JUSTICE GAILOR delivered the opinion of the Court.

The original bill in this cause was filed by complainant Johnson to secure specific performance of an alleged option to purchase real estate in Morristown, Tennessee. Under the firm name of B. & B. Gas & Oil Company, complainant and W. H. Browder, who died intestate on October 9, 1942, were, at the time of Browder's death, engaged in business, as partners, selling and distributing oil and gas at 902 West Main Street, Morristown, Tennessee. Prior to the partnerhip with the complainant Johnson, Browder had been in a partnership conducting the same business with a man named Burnett. In 1941 Burnett retired and Browder acquired his entire interest in the business. Later, in the same year, on December 23, 1941, formal articles of partnership were drawn and executed between W. H. Browder and the complainant Johnson. One of the provisions of these articles of partnership was that on the death of either partner, the survivor should have the right to buy the undivided half-interest of the other partner on appraisal. After the death of Browder, complainant exercised this right and acquired Browder's interest in the business, for a consideration of

$7,000. The instrument evidencing this acquisition of Browder's interest in the business was signed and acknowledged by Oda L. Browder as Administratrix of her husband's estate, and by Edward Millard as guardian of the two minor children of W. H. Browder, the defendants William L. and Richard C. Browder. This contract of sale is made an exhibit to the original bill.

At the time of the commencement of the partnership between complainant and Browder in 1941, Browder owned the real estate at 902 West Main Street, Morristown, on which the service station and bulk plant of the partnership operation was situated. The partnership did not buy this real estate but Browder leased it to the B. & B. Gas & Oil Company at a monthly rental of $100 for a term of five years, with a right in the partnership to renew the lease for five additional periods of one year each. The lease as executed was not drawn for the parties in its entirety, but a printed form of lease drawn and printed for the Shell Oil Company, was used to evidence the agreement and instead of striking out the word "Shell" where it appeared in the printed lease, and inserting the name of "B. & B. Gas & Oil Company," the lease contained the following proviso:

"Where ever the word Shell appears in this lease it is understood to mean the B & B Gas & Oil Company of Morristown."

That part of this lease which is the basis for the present litigation is Item 13, and is as follows:

"At any time during the term of this lease, or any extension or renewal thereof, Shell shall have the option to purchase the leased premises, together with all appurtenances thereto, and all improvements and equipment thereon, for the sum of Ten Thousand Dollars ($10,000). If Shell elects to exercise said option, it shall give Lessor

written notice of such exercise, and Lessor shall submit to Shell, within twenty days after receipt of such notice, evidence of Lessor's title to said premises, prepared at Lessor's expense, for examination by Shell's attorney.''

As stated, Browder died intestate on October 9, 1942. On August 31, 1946, the original five-year term of the lease expired, and on September 1, complainant paid the rent for one month, and on the 21st of September, gave the defendants notice in writing, of his election to exercise his option and purchase the real estate under the provisions of Article 13 of the lease quoted above. According to an allegation of the bill, this written notice was ignored, by the defendants, and on September 30, 1946, complainant filed the bill in this cause to secure specific performance of the option agreement. The defendants demurred to the bill on a number of grounds and the Chancellor, without giving his reasons, overruled the demurrer but permitted an appeal to this Court.

There are a number of assignments of error but the parties agree that the single question presented for determination is, in effect, whether the language of Article 13 of the written lease quoted above, constitutes a valid, complete and enforcible contract by which the complainant, individually, can specifically enforce a sale to him of the real estate in question.

It is well to remember that certain fundamental and indispensable conditions must be shown to justify a decree for specific performance. The contract must be clear, definite, complete and free from any suspicion of fraud or unfairness. *Parsons* v. *Hall* (184 Tenn. 363, 199 S. W. (2d) 99; *Gibson's Suits* in Chy., 1937 Ed. 949.

The gist of Article 13, copied above, is that W. H. Browder as owner of the real estate, agreed to sell to the *B. & B. Gas & Oil Company*, in which he was an active

partner with a one-half undivided interest, the described real estate for $10,000 during the term of the lease, or any renewal thereof. The B. & B. Gas & Oil Company was dissolved and ceased to exist as an active and going concern on Browder's death on October 9, 1942. Code sec. 7870. Also on Browder's death intestate, title to the real estate vested in his two minor sons, subject to the rights of his widow, if any she had.

■ The complainant seeks to enforce personally and as an individual, the option to purchase. This is the statement of his original bill. He bases his rights on two documents—Article 13 of the lease, and the contract executed only by the Administratrix and the minor's guardian, and not approved by any order of Court. To prevail over the minor's title, the agreement to sell must derive from the deceased parent. No action of the guardian without Court sanction, could affect the minors' title after the father's death. Clearly, the effect of the option given in the Article of partnership was only to sell a one-half interest, because Browder, as an equal partner, would retain a one-half interest after the sale to the B. & B. Gas & Oil Company.

■ In the light of the facts and attendant circumstances, we think the option contained in Article 13 of the lease must be construed strictly as being a special option to the B. & B. Gas & Oil Company, and to be good only so long as the partnership lasted with partners and interests as they were when the option was given in 1941. The selling price of $10,000 was fixed when Browder had a one-half undivided interest in the partnership. Of course we cannot speculate, and the record does not disclose the fair market value of the land when the option was given by Browder in 1941, or when Johnson undertook to exercise the option in 1946. However, we can

conclude that if $10,000 was a fair price for the land bought by the partnership, when Browder had a one-half undivided interest as a partner, the same amount would be grossly inadequate as a consideration to the widow and minor children of Browder, who had no interest in the business at the time of the proposed purchase by Johnson. A Court of equity will not decree specific performance of a contract unless the contract is fair and equitable beyond doubt. *McCarty* v. *Kyle*, 44 Tenn. 348; *Blair* v. *Snodgrass*, 33 Tenn. 1; *Gibson, supra.*

The sale of the assets to the surviving partner was made and executed by the widow as Administratrix only. In her character as Administratrix and personal representative of her husband's estate, she did not and could not waive her rights to dower and homestead in the realty. It is asserted in the original bill that the widow is estopped to claim homestead in the property, but there is clearly no merit in this contention because she can only be deprived of this constitutional right by her express consent evidenced by duly executed conveyance. Code sec. 7719; *Chamness* v. *Parrish*, 118 Tenn. 739, 103 S. W. 822; *Ryther* v. *Blackwell*, 113 Tenn. 182, 87 S. W. 260.

Finally we consider, the rights which complainant acquired by the guardian's execution of the bill of sale of the deceased partner's interest in the partnership. Since the guardian was acting without approval of any Court, he had no authority, and could make no valid agreement to sell the lands of his wards. *Singleton* v. *Love*, 38 Tenn. 357, 362; Code secs. 8503-8507.

For the reasons stated we think the learned Chancellor was in error in overruling the demurrer, and since a remand would serve no useful purpose, but would merely increase the expense of the litigation, an order will be

entered in this Court sustaining the demurrer and dismissing the bill at appellee's cost. *New York Casualty Co.* v. *Lawson*, 160 Tenn. 329, 343, 24 S. W. (2d) 881.

All concur.

### On Petition to Rehear.

█ Petition to rehear has been filed and met by motion on the part of respondents to dismiss the petition for its failure to comply with Rule 32 of this Court, 173 Tenn. 886. The petition to rehear contains nine assignments of error directed at our former opinion. Copies of the petition have been mailed to each member of the Court and have been carefully considered. It is clear from the body of the petition that the argument made to support the assignments of error is entirely a repetition of the argument made in briefs and argument of counsel presented to the Court before our original decision of the cause. While we sympathize with the zeal of counsel in representing his client and can understand his disappointment at losing his suit, *Andrews* v. *Crenshaw*, 51 Tenn. 151, 152, the reargument of the case as it is presented in the petition to rehear does not induce us to depart from Rule 32 of the Court, or to re-open the case. *Railroad* v. *Fidelity & Guaranty Co.*, 125 Tenn. 658, 691 and 692, 148 S. W. 671.

We think the motion to dismiss is well made, that the petition fails to comply with Rule 32 of the Court, and for that reason the motion is sustained and the petition to rehear is dismissed.

All concur.