Kyle C. NORTH, Petitioner,

v.

Mary ROBINETTE et al., Respondents.

Supreme Court of Tennessee.

Sept. 2, 1975.

Rehearing Denied Sept. 22, 1975.

Charles N. Rader, Ambrose, Wilson, Lockridge & Grimm, Knoxville, for petitioner.

G. W. Morton, Jr., Morton, Lewis,. King & Jones, Knoxville, for Robinette, Cooter and Larkin.

L. Caesar Stair, III, Knoxville, guardian ad litem for David Lindamood.

Bernstein, Dougherty & Susano, Knoxville, for David Lindamood.

OPINION

COOPER, Justice.

This action was brought by petitioner, Kyle C. North, against respondents, Mary Robinette, Melinda Cooter, Randall Larkin, and David Lindamood, to specifically enforce a lease-purchase contract of realty. In defense, the respondents took the position that petitioner had breached the contract and also that a forced sale of the property to petitioner for $12,000.00 (the value placed on the property by an appraiser chosen by petitioner) would constitute a

constructive fraud upon respondents in view of a then existing offer to purchase the property for $19,500.00. Question also was raised as to the competency of the respondent, David Lindamood, with the result that a guardian ad litem was appointed to represent Mr. Lindamood in this action.

On trial, the chancellor concluded the lease-purchase contract was valid and enforceable and decreed specific performance by all respondents, the sale price of the property being $14,000.00 as reported in an appraisal prepared for the court by Mr. John Swaggerty.

The Court of Appeals, with one judge concurring in part and dissenting in part, reversed the chancellor and dismissed the action on the grounds (1) it would be unconscionable to enforce the contract, and (2) that there is no competent evidence in the record to show what transpired between the conclusion of the evidentiary hearing and the entry of the final decree of the chancery court, which embraced the appraiser's report filed after the evidentiary hearing. In a separate opinion, Judge Goddard dissented from the judgment of the majority of the Court of Appeals dismissing the action against the respondents, Mary Robinette, Melinda Cooter, and Randall Larkin, on the ground that there was no showing of fraud, overreaching or unconscionability in the enforcement of the contract. He concurred in the dismissal of the action against David Lindamood on the basis that Mr. Lindamood was incompetent to contract for the sale of his interest in the property.

This court granted certiorari to review the action of the chancellor and of the Court of Appeals.

The record shows that the lease-purchase contract covers a house and lot located at 308 Twelfth Street in the City of Knoxville. The contract provides, inter alia, that:

"[I]f the Tenant [petitioner] upon written notice not less than thirty (30) days nor more than sixty (60) days prior to the expiration of the term, gives to the Landlords [respondents] or either of them, notice in writing that he desires to purchase the premises the Landlords will, at the end of the term, upon the payment of the purchase price to be determined as hereinafter set out and all rent to the end of the term, by good and sufficient warranty deed convey the premises to the Tenant free from encumbrances, with current taxes prorated.

"The purchase price shall be determined by the appraisals of two competent licensed real estate appraisers, one of whom is to be appointed by the Landlords and one by the Tenant. Should the two appraisers not be able to agree on the fair market value, the two of them shall appoint a third appraiser whose appraisal of the fair market value shall be binding."

(It should be noted that the determination of value in the above manner has the effect of insulating the seller against loss from a sharp increase in the value of the property during the term of the lease).

The petitioner exercised his option to purchase the property by letter to Mrs. Robinette, dated November 2, 1972. Following the provision of the contract relative to determining the price to be paid for the property, the petitioner had the property appraised by Mr. Hop Bailey, Sr., a Knoxville realtor, who fixed the fair market value of the property at $12,000.00.

The respondents did not specifically employ an appraiser, but submitted an appraisal made by Mr. Ken E. Galbraith for use by the Tennessee Valley Authority Credit Union in making a loan to a Mr. McCarter, who proposed to purchase the property from respondents. Mr. Galbraith's appraisal figure was $22,000.00.

No agreement was reached by the parties on the appointment of the third appraiser called for by the contract. The petitioner then filed the present action asking the court to appoint the third appraiser and to direct the respondents to specifically perform the contract and sell the property at its "fair market value" as determined by the third appraiser.

On trial of the action, the two appraisers testified as to the "fair market value" of the property. The respondents also introduced two witnesses who testified they were willing to purchase the property. Mr. Rex A. McCarter, a builder in the Knoxville area who owns a number of rental units, testified he stood ready, willing and able to pay the respondents $19,500.00 in cash for the property. Mrs. P. J. Sood testified she and her husband owned the lot adjoining the property here involved, and would pay $18,000.00 for the property.

At the close of the evidentiary hearing, the following colloquy took place between the chancellor and counsel for the parties:

"COURT: It is clear to the Court that you have got a paragraph in here that says if you have two appraisers and they don't agree that you get a third appraiser. Frankly, it would be my thinking that Mr. Galbraith's appraisal is somewhat suspect, but it qualifies, but we come to the point where there needs to be a third appraisal. I think it would be simpler for the Court to name appraisers than to have those two try to get together and name an appraiser. Mr. Galbraith might be shunt upon by Mr. Bailey and it might cause a conflict. I think we ought to just appoint an appraiser and require the parties to be bound as the contract calls for to the appraiser's figure regardless of whether it is below Mr. Bailey's or above Mr. Galbraith's, as the case may be. That's what the contract calls for.

MR. RADER [Representing Petitioner]: That's what we have asked for, Your Honor.

COURT: I understood you were trying to get them to take $12,000.00.

MR. RADER: No.

COURT: I think both parties are bound by this third appraiser and if that is the wish of the parties I will do it that way.

MR. MORTON [Representing all respondents except Lindamood]: That suits us, Your Honor.

COURT: Mr. John Swaggerty has had some experience, he is not one of these more expensive appraisers and I suggest that he be the third appraiser.

MR. MORTON: I have no objection.

COURT: The one by whom you will be bound.

MR. MORTON: Your Honor, I have one point of inquiry: to what extent may we, the parties, supply information to Mr. Swaggerty?

COURT: You are entitled to supply him anything you want to and he should be made aware of the facts that have been presented here today, both as to the offer of purchase, the prospective rental, what Mr. Galbraith has reported as his appraisal, what Mr. Bailey has reported as his appraisal, the income and the possible expense of renovation. He should look at it with that thought in mind himself and he should be given access to the property so that he can properly appraise it. Do you want the Court to retain the matter on the docket to carry out the final appraisal?

MR. MORTON: I think so, Your Honor.

COURT: I don't think you need anything other than to put down a decree after his appraisal is rendered requiring the parties to comply with the terms of his appraisal and we might as well wait a decree or judgment until he makes his appraisal.

MR. MORTON: Your Honor, I think the Court, for Mr. North's benefit, should divest the property out of Mr. Lindamood so there is no question about that.

COURT: I will do that at the time his appraisal comes in. We will just hold up the judgment until Mr. Swaggerty makes his appraisal and we will just put one judgment down to cover the whole matter."

From the above colloquy, it is evident that with the exception of the guardian ad litem, the parties agreed through counsel to the chancellor appointing the third apprais-

er called for by the lease-purchase contract and agreed to be bound by the "fair market value" reported by the appraiser.

The chancellor did appoint Mr. Swaggerty to appraise the property as agreed, and Mr. Swaggerty filed a comprehensive report showing the "fair market value" of the property to be $14,000.00.

The respondents filed exceptions, insisting the appraised "fair market value" was grossly inadequate in law and equity in face of the offers to purchase, and that to enforce the contract and to require sale of the property at the appraised "fair market value" of $14,000.00 would be unconscionable. The chancellor treated the exceptions as a petition to rehear, overruled them, and entered a decree for specific performance.

■ It is settled law in this state that specific performance of a contract is not available to a party as a matter of right, but rests in the sound discretion of the chancellor under the facts appearing in the particular case. *Moss Tie Co. v. Hill,* 191 Tenn. 582, 235 S.W.2d 587. Where specific performance is decreed, certain fundamental and indispensable conditions must be shown to exist. "The contract must be clear, definite, complete and free from any suspicion of fraud or unfairness." *Johnson v. Browder,* 185 Tenn. 601, 207 S.W.2d 1, 3.

"If a contract has all the essentials of validity, and is certain in its terms, is based on an adequate and valuable consideration, is fair and just in all its provisions, is free from any fraud, misrepresentation, illegality, or mistake, is capable of being enforced without hardship to either party, and if compensation in damages for its breach is impracticable, or would be inadequate, a bill will be maintained for its specific performance." Gibson's Suits in Chancery, 5th Ed., p. 237, Vol. 2.

■ This case is unique only in that the parties during the trial of the action re-affirmed the material terms of the contract calling for the sale of the realty. The respondents, at least those competent to make an agreement, agreed for the chancellor to appoint the third appraiser called for by the original contract, and further agreed that the "fair market value" determined by the court appointed appraiser would be binding on the parties. This agreement, coming as it did in open court, eliminated all possibility of fraud or overreaching in the selection of the method of determining the "fair market value" to be paid for the property, eliminated fraud and overreaching in the selection of a competent real estate appraiser, and also eliminated any misunderstanding as to the binding effect of the appraisal. Respondents, however, argue that to make them specifically perform their contract to sell the house and lot at a "fair market value" figure less than the purchase offers received by respondents after entry into the contract with petitioner would be unconscionable. The fact that other prospective purchasers may be willing to pay a price greater than the "fair market value" of the property as determined under the contract is not a basis for denying specific performance where consideration for the property is determined as provided by the agreement of the parties and the consideration thus determined is within the realm of reason.

"While equity will not specifically enforce an agreement which is not supported by an actual and valuable consideration, the general rule supported by most of the courts is that the mere fact that the consideration for a contract is inadequate does not justify a denial of the right to its specific performance, in the absence of any unfairness or overreaching in its procurement, where, in other respects, the contract conforms with the rules and principles of equity. According to this rule, merely to show a disproportion between the value of the subject matter of a contract and the consideration therefor is not sufficient to authorize the court to deny the specific enforcement of the contract. The mere fact that a vendor should have received more money for the property does not show inadequacy of

consideration . . ." 71 Am.Jur.2d, Specific Performance, Sec. 78, pp. 108–109.

In this case, finding no abuse of discretion on the part of the chancellor, the decree of specific performance is affirmed so far as it pertains to the respondents, Mary Robinette, Melinda Cooter, and Randall Larkin. The respondent, David Lindamood, stands in a different position, however. As heretofore noted, the chancellor appointed a guardian ad litem to investigate Mr. Lindamood's mental condition and to protect Mr. Lindamood's rights in the property involved in this action. One of the doctors who examined Mr. Lindamood reported, "It is my opinion that Mr. Lindamood is mentally competent, however, patience and time must be allowed him as well as careful explanation of any subject matter to be sure his opinion is valid. For these reasons, I think he should have a guardian to manage his affairs."

The second doctor reported, "Mr. Lindamood is not completely 'incompetent,' as you put it, to 'comprehend the significance of these proceedings.' Mr. Lindamood is definitely not able to protect himself and look after his own interest."

These statements lead us to believe that Mr. Lindamood has the capacity to form a valid opinion as to the effect of the lease-purchase contract, but only if the contract was fully and carefully explained to him. The circumstances attending Mr. Lindamood's execution of the lease-purchase agreement were not explored on trial of this cause, other than to show that the contract was signed outside the presence of petitioner. This leaves us in doubt as to the capacity of Mr. Lindamood to execute the lease-purchase agreement. To resolve this doubt and to ensure the protection of Mr. Lindamood's interest in the property, we think it necessary and proper to remand the action against him to the Chancery Court of Knox County for that court to determine Mr. Lindamood's capacity to execute the lease-purchase agreement. If it is deter-mined that Mr. Lindamood had the capacity to execute the contract under the circumstances attending the signing of the contract, then the chancellor will decree specific performance of the contract and divest Mr. Lindamood of his interest in the property. If it is determined that Mr. Lindamood did not have capacity to execute the contract, the chancellor will then determine if it is in the best interest of Mr. Lindamood to retain the property or to sell his interest at public sale.

Accordingly, the judgment of the Court of Appeals dismissing this action is reversed. The decree of the chancellor is affirmed so far as it decrees specific performance of the lease-contract by respondents, Mary Robinette, Melinda Cooter, and Randall Larkin. The action is remanded to the Chancery Court for further proceedings in accord with this opinion relative to Mr. Lindamood's interest in the property. Costs incident to the appeal are adjudged two-thirds against the respondents, Mary Robinette, Melinda Cooter, and Randall Larkin, and one-third against the petitioner, Kyle C. North.

FONES, C. J., and HENRY, BROCK and HARBISON, JJ., concur.