| WHITNEY STEGALL, | ) | Rutherford County Probate |
|---|---|---|
| Plaintiff/Appellee | ) | No Case Number |
| VS. | ) | Appeal No. 01A01-9704-PB-00147 |
| DOTTIE LOU PRYOR, BENTON M. MASON, JR., HUGH BURTON MASON, WILLIAM E. MASON, JR., TAYLOR S. MASON, and BOB S. MASON, | ) | |
| Defendants/Appellees | ) | |
| KIRKLAND A. MASON, TIMOTHY A. MASON, JILL MASON QUIGG, EDWARD C. MASON, and CHRISTOPHER C. MASON, | ) | |
| Defendants/Appellants | ) | |



**FILED**

October 3, 1997

Cecil W. Crowson
Appellate Court Clerk

## IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

### APPEAL FROM THE PROBATE COURT OF RUTHERFORD COUNTY
### AT MURFREESBORO, TENNESSEE

### HON. TOM E. GRAY, CHANCELLOR, 18TH JUDICIAL DISTRICT AT GALLATIN, SITTING BY INTERCHANGE

Darrell L. West
144 Second Avenue, North
The Pilcher Building, Suite 300
Nashville, TN 37201
and
Dan E. Huffstutter
144 Second Avenue, North
The Pilcher Building, Suite 333
Nashville, TN 37201
ATTORNEYS FOR
DEFENDANTS/APPELLANTS

Richard F. LaRoche, Sr.
107 North Maple Street
Murfreesboro, TN 37133-1648
and
Jerry Scott
John Kea
Scott & Kea
P. O. Box 1216
Murfreesboro, TN 37133-1216
ATTORNEYS FOR
DOTTIE LOU PRYOR, ET. AL.,
DEFENDANTS/APPELLEES

Val Sanford
Julie C. Murphy
Gullett, Sanford, Robinson & Martin
230 Fourth Avenue North, 3rd Floor
P. O. Box 198888
Nashville, TN 37219-8888
ATTORNEYS FOR
WHITNEY STEGALL,
ADMINISTRATOR C.T.A.  OF
THE ESTATE OF V. R. MASON
PLAINTIFF/APPELLEE

### AFFIRMED AND REMANDED

WILLIAM H. INMAN, SENIOR JUDGE

CONCUR:
HENRY F. TODD, PRESIDING JUDGE, MIDDLE SECTION
WILLIAM C. KOCH, JR., JUDGE

| | |
|---|---|
| **WHITNEY STEGALL,** | ) |
| | )   **Rutherford County Probate** |
|     **Plaintiff/Appellee** | )   **No Case Number** |
| | ) |
| **VS.** | )   **Appeal No. 01A01-9704-PB-00147** |
| | ) |
| **DOTTIE LOU PRYOR, BENTON M.** | ) |
| **MASON, JR., HUGH BURTON** | ) |
| **MASON, WILLIAM E. MASON, JR.,** | ) |
| **TAYLOR S. MASON, and** | ) |
| **BOB S. MASON,** | ) |
| | ) |
|     **Defendants/Appellees** | ) |
| | ) |
| **KIRKLAND A. MASON, TIMOTHY A.** | ) |
| **MASON, JILL MASON QUIGG,** | ) |
| **EDWARD C. MASON, and** | ) |
| **CHRISTOPHER C. MASON,** | ) |
| | ) |
|     **Defendants/Appellants** | ) |

# O P I N I O N

V. R. Mason died testate on October 29, 1995. The executor, Richard F. LaRoche, Jr., propounded the will for probate; in the ease of language it provided for the payment of debts and taxes and created a trust for a family cemetery, with the remainder to pass under the laws of intestate succession.

The decedent's heirs are the children and grandchildren of his father's siblings. Reference the caption of this Opinion: Dottie Lou Pryor; Benton M. Mason, Jr.; Hugh Burton Mason; William E. Mason, Jr.; Taylor S. Mason; Dirkland A. Mason; Timothy A. Mason; Jill Mason Quigg; Edward C. Mason; and Christopher C. Mason.
As tenants in common, the appellants own 21 percent of the estate *per stirpes;* the appellees own 79 percent *per stirpes.*

The decedent owned two tracts of real property, consisting of a 1.6 acre tract and a 160 acre tract. The post-mortem appraisal of the larger tract, with attendant death tax consequences, brought about the admitted insolvency of the estate since the personal property was not sufficient to pay the estate and inheritance taxes.

Compelled by this circumstance, the executor filed a recitative petition in the Probate Court alleging that both tracts of the real estate should be sold. The executor then resigned, and Whitney Stegall was appointed Administrator C.T.A.

By Order entered on July 16, 1996 the court found and decreed that the personalty was insufficient to pay the costs of administration and the taxes and directed the Administrator C.T.A. to sell the 1.6 acre tract; to establish and endow the private cemetery; and, after investigation, to report his recommendation relative to the disposition of the 160 acre tract.[1]

On August 5, 1996 a Limited Power of Attorney[2] was executed by all of the heirs, naming Mr. Stegall as their attorney in fact "to act for us . . . in any and all business, financial, legal and other matters that affect that certain parcel of real property . . . of 160.74 acres."

The Power of Attorney specifically authorized Mr. Stegall (1) to borrow the necessary funds with which to pay estate and inheritance taxes, (2) to execute a mortgage on the real estate as security for the payment of the loan, and (3) to sell the real estate

> "upon such terms as said attorney may deem proper subject to our said attorney utilizing the following methods of offering the real property for sale: (a) from the date hereof [August 5, 1996] until September 30, 1996 solicit offers to sell [sic] the real property from private developers and all other interested persons, employing such private and public forums as our said attorney may deem appropriate to sell the real property; (b) from October 1, 1996 until April, 1997 utilized [sic] the professional services of a real estate broker by entering into a real estate listing contract, and finally if necessary to sell the real estate; (c) after April 1, 1997 sell the real estate by absolute auction; (4) . . . ; (5) . . . ; (6) *To allow any of* the undersigned the right to match any offer to purchase the real property *which our attorney in fact would propose to accept,* subject to said undersigned individual's right of refusal being limited to ten calendar days from the date our said attorney in fact notifies us of the offer to purchase the real property [emphases added]."

The Power of Attorney then provides that it "may not be terminated except by . . . a majority of the undesigned giving said attorney written notice of termination."

The prescribed procedures were followed by Mr. Stegall, as attorney-in-fact, who employed a real estate agent, the Parks Group, to sell the property. Offers were received, one of which was from Weston Retail Properties. Mr. Stegall, as Administrator C.T.A., filed a motion seeking the approval of the Court "to execute a purchase and sale

---

[1] To advise the court whether the tract might advantageously be sold at private sale or by a public, judicial sale.

[2] Although in the record, the transcripts do not reflect that it was formally introduced in evidence. The parties treat it as having been introduced and considered by the Court. So will we.

agreement." We note the careful language employed; approval of a sale is not sought.

On November 13, 1996, the Court entered an Order [3] directing the Administrator C.T.A. to execute the purchase and sale agreement and to require an increase in the amount of earnest money. Although not incorporated in the Order, the Chancellor directed Mr. Stegall to give notice to the heirs and to honor the ten day period mentioned in the Power of Attorney.

The heirs were appropriately notified by Mr. Stegall, acting in his dual capacity.

On November 14, 1996 [the day following the judicial direction to the Administrator C.T.A. to execute the Purchase and Sale Agreement], the appellants tendered an offer identical to the Weston offer to the real estate agent. This action was followed by the delivery of an instrument dated November 18, 1996 executed by the appellees [excepting Bob S. Mason] owning 66 percent of the interest, which purported to terminate the Power of Attorney. [4]

In his capacity as Administrator C.T.A. Mr. Stegall, on December 10, 1996 filed another motion in the Probate Court reciting that none of the heirs was financially able to make a bona fide matching order and should not be allowed to 'speculate' because time was of the essence, and that he was in receipt of another offer for the tract which should be accepted and approved. This offer from Pirtle, which was his second offer, was $2,591,000.00; the offer from Weston was $2,566,700.00, the latter allegedly matched by the appellant heirs pursuant to the provision of the Power of Attorney.

A plenary hearing was had on this motion. The Administrator C.T.A. recommended that the Pirtle offer be approved; the appellant heirs objected, insisting that since they had 'matched' the Weston offer and had tendered earnest money, no further offers or bids could be considered.

The trial court thereafter rendered a judgment reiterating that the estate was insolvent; that the Administrator C.T.A. had brought the property 'back into the estate'; that when the heirs matched the Weston offer the matter was thereupon reopened; and

---

[3] A hearing was held on the motion giving rise to this Order, but there is no transcript of it in the record. In accordance with established law, we therefore treat this Order as having been entered pursuant to and fully supported by the evidence.

[4] If the Power of Attorney was properly terminated, as urged by the appellees, the appellants' case must fail for that reason. But the issue is not crucial to a resolution of the case.

4

that the best interests of the estate must be considered, which required the consummation of the sale to Pirtle, whose offer was the best and highest received.

The five 'appellant heirs' appeal, and present these issues for review *en haec verba:*

1. Whether the Purchaser Heirs had a contractual right to purchase the real property which is the subject of this action on terms approved by the trial court on November 5, 1996, by virtue of the Purchaser Heirs' exercise of a right of first refusal purchase option previously granted and agreed to by the all of the heirs of V. R. Mason, which right of refusal was reaffirmed by the trial court on November 5, 1996.

2. Whether the trial court erred in holding that the Purchaser Heirs' exercise of their right of first refusal purchase option, pursuant to the trial court's November 5, 1996 ruling, had the effect of opening up the subject property to purchase offers from third parties.

3. Whether the trial court erred in holding that the Purchaser Heirs' right of first refusal was lost by virtue of a purported revocation of a Limited Power of Attorney which contained the right of first refusal, which revocation was executed by some of the other heirs after the Purchaser Heirs had executed their right of first refusal purchase option.

4. Whether the trial court erred (i) in finding that the Purchaser Heirs were "speculating" in their purchase of the subject real property; and (ii) in refusing to permit a sale to the Purchaser Heirs on the basis of such perceived speculation.

At the outset, we observe that although the appellants filed no motion or other pleading, we deduce from the entire record, including argument, that the relief they seek is specific performance, i.e., that the Administrator C.T.A. should judicially be required to convey the 160 acres to them, and that they should be allowed to purchase the property.

Our review is *de novo* on the record of the trial court, accompanied with a presumption of correctness unless the evidence otherwise preponderates. RULE 13(d) Tenn. R. App. P. There is no presumption of the correctness of the decision of the trial court on a question of law. *NCNB Nat'l Bank v. Thrailkill,* 856 S.W.2d 150 (Tenn. Ct. App. 1993).

The thrust of the appellants' argument is that when they 'matched' the Weston offer the matter was at an end and the attorney-in-fact should be directed to convey the property to them.

5

It is not disputed that they 'matched' the Weston offer to the extent they tendered the required earnest money; [5] neither is it disputed that the Administrator C.T.A. was authorized to execute the Purchase and Sale agreement, but no agreement was in fact executed; neither is it disputed that the trial judge orally instructed the Administrator C.T.A. to advise the heirs in accordance with the ten day provision of the Power of Attorney. So far as the record reveals, the appellants made no attempt to match the Pirtle offer.

We agree with the argument that it is a fundamental rule of property law that real property passes directly to heirs at law or to devisees. *Crook v. Crook,* 345 S.W.2d 679 (Tenn. 1961). But there are exceptions to this rule, one being that the real estate is subject to the debts of the decedent if the personal property is insufficient to pay them. The personal representative may sell the real estate to pay estate obligations if authorized by the will, and if not, he must institute legal proceedings to accomplish that purpose. *Crook, supra.*

Our view of the case does not require us to consider the implications inherent in the language "brought back into the estate." We are content to hold that when the estate was adjudicated to be insolvent, essentially by agreement of the parties, it remained at all times and for all purposes subject to the jurisdiction of the Probate Court. Tenn. Code Ann. § 30-2-402, *et seq.* Moreover, we note that the Order of November 13, 1996 merely authorized the Administrator C.T.A. *to execute an agreement*; it did not authorize him to approve a sale. The heirs were allowed to submit a matching offer, but this fact did not vest in them an inalienable right. Any sale remained subject to judicial approval, and even then, an approved sale is not complete until it has been *confirmed* by the court which ordered the sale. *Tenn. Marble & Brick Co. v. Young,* 163 S.W.2d 71 (Tenn. 1942).

We struggle with the implied issue of whether the Power of Attorney is enforceable. The estate had been adjudicated insolvent, and the heirs had no right to interfere with or oust the jurisdiction of the Court, which was concerned with the sale of

---

[5] There was unrebutted testimony offered that the purchaser heirs - the appellants - were merely speculating, and could not arrange the requisite financing. The Court so found. We do not dwell on this issue since it is presently irrelevant to a resolution of the case. Obviously, if they did not have the requisite funds or credit worthiness they could not, and thus did not, match the offer.

6

the land and not the title interests of the heirs. But our resolution need not rest on the nebulous validity of the Power of Attorney; to the contrary, we may assume its validity at least to the extent it does not infringe upon the prerogative of the Probate Court to deal with insolvent estates.

The language of the Power of Attorney is interesting. The attorney-in-fact is authorized "to allow any of the undersigned to match any offer," which we interpret to mean that discretion is reposed in him *to allow* any heir to match an offer which he would propose to accept. Even so, we reiterate that the authority of the Administrator C.T.A. is absolutely subject to the superior right of the Probate Court.

As we have heretofore observed, there is no evidence in this record that the appellants 'matched' the offer of Pirtle which was, prima facie, the highest offer, and analysis proved it to be the highest and best offer. The Administrator C.T.A. was clearly obligated to present all three offers to the Court; he could not, as attorney-in-fact, bind the estate to the *acceptance* of any offer. In neither capacity could he usurp the authority of the Probate Court.

It should be noted that the Power of Attorney granted no right of first refusal as that term is commonly understood. The language employed - "to allow any of the undersigned the right to match any offer" - does not give a right to purchase, and no Order was entered so providing.

Finally, the granting of specific performance lies within the sound discretion of the Court under the peculiar facts, *T. J. Moss Tie Co. v. Hill,* 235 S.W.2d 587 (Tenn. 1951); *Johnson v. Browder,* 207 S.W.2d 1 (Tenn. 1947), and the appellants offered no evidence whatever upon this point. While the issue of specific performance was never directly propounded to the Probate Court, the thrust of the appellants' argument on appeal is directed to this issue. We find no abuse of discretion on the part of the trial court in declining to hold that the appellants had a contractual right to purchase the property.

The judgment is affirmed at the costs of the appellants.

7

_____
William H. Inman, Senior Judge

CONCUR:

_____
Henry F. Todd, Presiding Judge, Middle Section


_____
William C. Koch, Jr., Judge