IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 10, 2005 Session

## FOUR EIGHTS, LLC., v. AHMAD SALEM

**Direct Appeal from the Chancery Court for Davidson County**
**No. 04-902-III     Hon. Ellen Hobbs Lyle, Chancellor**

**No. M2004-01569-COA-R3-CV - Filed November 29, 2005**

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Reversed.**

**and**

## AHMAD SALEM v. FOUR EIGHTS, LLC.

**Direct Appeal from the Chancery Court for Davidson County**
**No. 04-754-II     Hon. Ellen Hobbs Lyle, Chancellor**

**No. M2005-00430-COA-R3-CV**

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

Option to purchase under lease was dismissed by the Trial Court. Consolidated action by defendant for detainer and fees was granted by the Trial Court. We affirm the dismissal of the action on option but reverse the Judgment for detainer and fees.

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

G. Kline Preston, IV., Nashville, Tennessee, for appellant, Ahmad Salem.

Harlan Dodson, III, and Donald Capparella, Nashville, Tennessee, for Appellee, Four Eights, LLC.

# OPINION

These actions were consolidated on appeal, which involves the same parties. In the first appeal filed, the plaintiff is Four Eights, LLC, and the defendant is Ahmad Salem, (the second appeal filed has the parties reversed). Four Eights, LLC, filed one action claiming that their lessee, Ahmad Salem, was unlawfully holding over after the lease term had expired. It claimed that the parties had a lease for commercial property which was dated March 3, 1999, and expired on March 1, 2004, and that Salem had continued to wrongfully occupy the property past that date. Four Eights asked for immediate possession, as well as damages, fees and costs.

Salem answered, denying the allegations of the Complaint, and claimed that he had attempted to exercise his option to purchase the property set forth in paragraph 4 of the Lease Agreement. He also raised the affirmative defense of prior suit pending, which he had filed, claiming that he was entitled to enforce the option to purchase, and that his action was filed first.

The Court entered a Memorandum and Order in that case, finding that Salem had attempted to exercise the option, which was "an act consistent with, indicative of and which may occur only at the end of the lease term", such that the lease had been terminated by said attempt, and Salem was holding over. The Court found that the lessor never notified the lessee that the lease term was at an end. Having found that Salem was holding over, the Court granted plaintiff's Complaint to have Salem removed. The Court granted Salem a stay, pending appeal, in its Final Judgment, wherein it ordered that Four Eights would be restored to possession of the property and would receive damages of $10,000.00.

In the action brought by Salem, both parties filed Motions for Summary Judgment, and the Trial Court found that the intent of the parties under the Lease Agreement was "manifest", and there was no ambiguity requiring interpretation.[1] The Court found that the typical meaning of

---

[1]The lease agreement, in paragraph 4, states:
The initial term of this Lease is five (5) years commencing 3/1/99, and expiring 3/1/2004 (*"Initial Term"*). Following the end of the Initial Term of this Lease and subject to the following provision, the Lessee may continue this Lease for an additional term of five (5) years commencing 3/1/2004 and expiring 3/1/2009 ("Extended Term"). Provided, however, Lessor shall have the right to cancel Lessee's option for the Extended Term of this Lease by giving the Lessee written notice, at least sixty (60) days prior to the end of the Initial Term, of the Lessor's desire to terminate the Lease Agreement as of the end of the Initial Term. This Lease shall then terminate on the as of [sic] the end of the Initial Term.

fair market value had been rendered indefinite and unascertainable by the sentence which said it had to be determined by the parties, and that the parties had thus redefined fair market value to be something that they had to agree on, and not the usual use of the term.  The Court further found that the document did not provide the Court with any way to ascertain the price.

Finally, the Court held that since the wording of the document did not provide a definite price term for the option, or an enforceable mechanism by which the price term could be determined, there was no enforceable option to purchase.  The action was then dismissed.

The following issues are raised on appeal:

1.      Whether the trial court erred in finding that Salem was a holdover tenant within the meaning of Tenn. Code Ann. §29-18-101 et seq.?

2.      Whether Four Eights is entitled to attorney's fees?

3.      Whether the trial court erred in finding that Salem had no enforceable option to purchase the property?

The issue of whether the option to purchase is enforceable is addressed first because it affects the remaining issues.  The Trial Court found that there was no enforceable option, because the price term was too indefinite and could not be determined.  It is well-settled that the interpretation of a contract is a matter of law, and the Court must review the Trial Court's conclusions on matters of law *de novo*, with no presumption of correctness.  *Campora v. Ford*, 124 S.W.3d 624 (Tenn. Ct. App. 2003); Tenn. R. App. P. 13(d).  The price term stated in the contract is simply  "its then fair market value", and the contract also states that "Fair Market Value must be determined by the Lessor and Lessee, negotiating in good faith, within thirty (30) days of Lessee [sic] notice to Lessor of the election to purchase the Premises."

Salem argues that the term "fair market value" has a common usage and is an ascertainable value, and thus the Court erred in holding that it was too indefinite to be enforced.

---

All rights and obligations of the parties under this Lease shall end as of the end of this Lease, whether that be at the end of the Initial Term or the Extended Term, except the Lessee shall be given the option to purchase the Premises for its then fair market value ("*Fair Market Value")*.  Lessee must notify the Lessor, in writing, within ten (10) days from date the Lessee is notified by the Lessor that the Lease cannot be extended to the Extended Term.  The Fair Market Value must be determined by the Lessor and Lessee, negotiating in good faith, within thirty (30) days of Lessee [sic] notice to Lessor of the election to purchase the Premises.

While we have recognized that "fair market value" has a common meaning, *see Harper-Wittbrodt Automotive Group, LLC v. Teague*, 2002 WL 31467888 (Tenn. Ct. App. 2002), that does not resolve the issue. As the Trial Court found, if the parties had simply utilized the term "fair market value", then the Court could have ascertained the same based on its common usage. By adding the provision that "Fair Market Value <u>must be determined</u> by the Lessor and Lessee, negotiating in good faith" (emphasis supplied), the parties basically made an "agreement to agree" to something in the future, and such agreements have generally been held unenforceable, both in this jurisdiction and others.

For example, in the case of *United American Bank of Memphis v. Walker*, 1986 WL 11250 (Tenn. Ct. App. 1986), this Court stated:

> In order for a contract to be binding it must spell out the obligation of the parties with sufficient definiteness that it can be performed. All the essential terms of a contract must be finally and definitely settled. None must be left to determination, by future negotiations. It clearly appears from this writing that there was no definite contract or mutually agreed upon option to sell or any price determined in the agreement. As was said in the case of *King v. Dalton Motors, Inc.*, 109 S.W.2d 51 (Minn.1961) in which a plaintiff purchaser had a "first option to purchase said property ... at a price to be negotiated and to be agreeable between the parties at the time of the sale." The court refused to enforce this contract saying:
>
>> It is a fundamental rule of law that an alleged contract which is so vague, indefinite and uncertain as to place the meaning and intent of the parties in the realm of speculation is void and unenforceable. Consequently where substantial and necessary terms are specifically left open for future negotiations, the purported contract is fatally defective. On the other hand, the law does not favor the destruction of contracts because of indefiniteness and if the terms can be reasonably ascertained in a manner prescribed in the writing, the contract will be enforced.
>
> Such a provision provides no standard for ascertaining the price or any other conditions of the sale and is, in our opinion, fatally uncertain and unenforceable in any form of action.

*See, e.g.*, *Vollmer v. Abney*, 1988 WL 83660 (Tenn. 1988). *Accord; See Muscle Shoals Aviation, Inc., v. Muscle Shoals Airport Authority*, 508 So.2d 225 (Ala. 1987)("contract to enter into a future contract must specify all its material and essential terms, and leave none to be agreed upon as a result of future negotiations"); *Goodwest Rubber Corp. v. Munoz*, 170 Cal. App. 3d 919 (Cal. Ct. App. 1985)(fair market value can be established, and does not require future agreement of buyer and seller); *Tonkery v. Martina*, 167 A.D.2d 860 (N.Y. App. Div. 1990)(price term not indefinite unless it requires the need for new expressions by the parties); *Lire, Inc., v. Bob's Pizza Inn Restaurants, Inc.*, 541 N.W.2d 432 (N.D. 1995)(agreement to agree is unenforceable - terms so indefinite that it

fails to show mutual intent). As stated in 71 Am. Jur. 2d Specific Performance §47 (2001), "The general rule that a contract is not sufficiently certain and definite to be specifically enforced if some of its essential terms are left for the future determination or agreement of the parties themselves is usually applied if the contract price is left to be determined by the parties. Accordingly, an option to purchase contained in a lease, at a price to be subsequently agreed upon by the parties, is too indefinite to be specifically enforceable."

As the Trial Court found, if the parties herein had simply agreed that the property could be purchased for fair market value, then the price could have been determined by the Court according to the common usage of that term. Where the parties went on to require, however, subsequent agreement after negotiation, the price was rendered too indefinite to be enforced by specific performance. As our Supreme Court has held:

> It is settled law in this state that specific performance of a contract is not available to a party as a matter of right, but rests in the sound discretion of the chancellor under the facts appearing in the particular case. Where specific performance is decreed, certain fundamental and indispensable conditions must be shown to exist. 'The contract must be clear, definite, complete and free from any suspicion of fraud or unfairness.'

*North v. Robinette*, 527 S.W.2d 95, 98 (Tenn. 1975). The option in this case was not definite enough regarding price such that specific performance could be decreed. The Trial Court's judgment on this issue is affirmed.

The Trial Court held that, pursuant to Tenn. Code Ann. §29-18-101 *et seq*., Four Eights had to demonstrate that Salem was holding over before its detainer action could be enforced. The Court looked at the lease and determined that "because the option to purchase is contained in the same sentence with an explanation concerning the end of the parties' rights and obligations under the lease, the option to purchase is an act consistent with, indicative of and which may occur only at the end of the lease term." The Court thus held that Salem's attempt to exercise the option constituted an act which terminated the lease, and that Salem was holding over.

Salem argues that the language of the lease does not support this interpretation. As our Supreme Court has explained:

> "When resolving disputes concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language." *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). If a contract's language is clear and unambiguous, then the literal meaning of the language controls the outcome of the contract dispute.

*City of Cookeville ex rel. Cookeville Regional Med. Ctr. v. Humphrey*, 126 S.W.3d 897, 903 (Tenn. 2004).

Likewise, this Court held:

> The language used in a contract must be taken and understood in its plain, ordinary, and popular sense. In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning. If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. A contract is not ambiguous merely because the parties have different interpretations of the contract's various provisions, nor can this Court create an ambiguity where none exists in the contract. Courts cannot make contracts for parties but can only enforce the contract that the parties themselves have made. The interpretation of a written contract is a matter of law and not of fact.

*Campora v. Ford*, 124 S.W.3d 624, 628 (Tenn. Ct. App. 2003).

The lease in this case provides that at the end of the initial term, the lessee "may continue this Lease for an additional term of five (5) years commencing 3/1/2004 and expiring 3/1/2009 ("Extended Term"). Provided, however, Lessor shall have the right to cancel Lessee's option for the Extended Term of this Lease by giving the Lessee written notice, at least sixty (60) days prior to the end of the Initial Term, of the Lessor's desire to terminate the Lease Agreement as of the end of the Initial Term. This Lease shall then terminate on the as of [sic] the end of the Initial Term." The Trial Court expressly found that such notice of cancellation was not given by the Lessor in this case. Thus, the plain language of the lease states that it could be extended at Salem's discretion for another five years, and the lease required no additional act by Salem in order to do so. There is no dispute that Salem continued to occupy the premises and pay rent. Given the plain and unambiguous language of the lease, Salem had the right to extend the lease for another five years. Thus, the Trial Court erred in its finding that Salem was holding over.

The Trial Court based its finding solely on the following sentence in the next paragraph, wherein the lease states, "All rights and obligations of the parties under this Lease shall end as of the end of this Lease, whether that be at the end of the Initial Term or the Extended Term, except the Lessee shall be given the option to purchase the Premises for its then fair market value ("*Fair Market Value*")." The Court held that since Salem tried to exercise this option to purchase the property near the end of the initial lease term, this was an act "consistent with, indicative of and which may occur only at the end of the lease term", and thus the lease was terminated by Salem's action. The plain language of the lease does not support this interpretation, however, as the lease does not state that the lessee's attempt to exercise the option will terminate the lease. Under this interpretation, if Salem had attempted to exercise the option at any time during the initial five year term, the lease would have terminated at that time, and that simply is not what the lease states. The lease provides that lessee will be given the option to purchase the property at the end of the lease term, but it does not state that if the lessee tries to purchase the property at any other time, the lease will automatically terminate.

-6-

If the language of a written document is unambiguous, as the Trial Court found herein, we agree the Court must interpret it as written, and cannot make a new contract for the parties, but can only enforce the contract that the parties themselves have made. *Campora.* In this case, the Trial Court added terms to the parties' lease that did not exist, and since Four Eights did not cancel Salem's option to extend the lease term as required by the lease, and since Salem continued to occupy the premises and pay rent after the expiration of the initial term, he extended the lease pursuant to its plain terms, and should not have been found to be a holdover tenant. The Trial Court's judgment on this issue is reversed.

Finally, the lease provides that if the lessor has to employ an attorney to enforce collection of rents or compliance with any provisions of the lease, then the lessee will be liable for reasonable attorney's fees incurred. The Trial Court awarded $10,000.00 in fees to Four Eights based on its detainer action, and Four Eights concedes that if the Court's judgment on that issue is ultimately not upheld , it would not be entitled to those fees. Accordingly, this Court has negated the detainer action, and the award of fees is likewise reversed.

In sum, the Trial Court's Judgment regarding the enforceability of the option to purchase is affirmed, and the Trial Court's Judgment in the detainer action and award of fees to same is reversed.

The causes are remanded with the cost of the appeal assessed one-half to Four Eights, LLC., and one-half to Ahmad Salem..

_____
HERSCHEL PICKENS FRANKS, P.J.