IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 8, 2010 Session

COREY GERULIS AND WIFE SARA FELMLEE v. DANIEL A. JACOBUS,
ET AL.

Appeal from the Chancery Court for Wilson County
No. 06163      Charles K. Smith, Chancellor

No. M2009-00886-COA-R3-CV - Filed April 23, 2010

Prospective buyers entered into a contract with construction company for purchase of a home; the contract was amended to provide that a garage would be constructed. A letter was subsequently prepared specifying a time for the buyers to tender payment for the garage. The buyers failed to secure a loan to finance construction of the garage until a year after closing. When the construction company refused to build the garage for the amount specified in the contract amendment, the buyers initiated this action. The trial court found that the letter clarified the amendment by setting a time for performance and that the buyers' failure to pay within that time was a breach of the agreement which relieved the construction company of its contractual obligations; the court consequently dismissed buyers' action. Finding that there was not an agreement between the parties, the trial court's determination that the letter clarified the amendment is reversed. Finding that a reasonable time for performance was 90 days from closing on the home, and that the buyers' failure to tender payment within such period was a material breach, we affirm the trial court's determination that the construction company was relieved of its contractual obligations.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in
Part and Affirmed in Part

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., and ANDY D. BENNETT, JJ., joined.

Timothy A. Drown, Nashville, Tennessee, for the appellants, Daniel A. Jacobus and Debra Jacobus.

Byron M. Gill, Lebanon, Tennessee, for the appellees, Corey Gerulis, Sara Felmlee, and Heartland Construction, LLC.

**OPINION**

## I. Procedural and Factual History

Heartland Construction ("Heartland"), a Tennessee limited liability company, was the developer and builder of the Chestnut Glen subdivision in Wilson County, Tennessee. On June 17, 2004, Daniel and Debra Jacobus (the "Jacobuses") made an offer to purchase a home in Chestnut Glen on a form entitled New Construction Purchase and Sale Agreement ("Agreement"). On June 20, the Jacobuses met with Corey Gerulis, managing member of Heartland, at the site of the new home and discussed adding a detached garage with him; a document was signed by the Jacobuses and Mr. Gerulis on that date which provided, *inter alia*, that "[a]fter closing, builder will complete a 24x30 detached garage - 50ft setback from house . . . Garage to have two dormers 3 side brick - $10,200 to be paid by buyer." Thereafter, Heartland prepared a letter dated June 24 ("June 24 Letter"), providing in part that "[w]ithin 30 days after closing on this house The Jacobus [sic] will pay Heartland Construction, LLC $10,200 to build a 24x30 detached garage. . . ". Although Mr. Gerulis' signature on the Agreement is not dated, the listing agent, Kathy O'Brien-Streets, signed the Agreement verifying that the Jacobuses' offer was accepted on June 28. Also on June 28 the parties signed an "Amendment to Agreement, Amendment 'B'" ("Amendment B"), which contained the following language: "After closing, buyer will pay builder $10,2000 [sic][1] to complete a 24 X 30 detached garage 50 ft setback from house. Garage to have 2 dormers, wired for two, 220 outlets and 3 side brick to match house. Included is a concrete side walk from existing driveway to deck." Amendment B was attached as the final page of the Agreement.

The record reflects that the June 24 letter, as well as another addendum to the Agreement relating to kitchen countertops, was signed by Mr. Gerulis on July 1 and submitted to the Jacobuses. On July 2, the Jacobuses signed the addendum relating to the countertops as presented; Mr. Jacobus changed the number of days specified in the June 24 Letter from 30 to 90 and signed it. Mr. Gerulis did not sign the letter after Mr. Jacobus changed the number of days or initial the change made by Mr. Jacobus. The parties closed on the home on July 30.

In order to finance the construction of the garage, the Jacobuses applied for a loan; two of their applications were denied and a third was approved with a high interest rate. The Jacobuses requested a credit report and discovered that Mr. Jacobus had a number of erroneous postings to his report which negatively affected his credit rating and, ultimately,

---

[1] Both parties agree that Amendment B incorrectly listed the price as "$10,2000" and that the price should have been listed as $10,200.00.

his ability to secure a loan. Almost a year after closing on the home, Mr. Jacobus rectified the error, obtained a loan, and contacted Heartland to begin construction on the garage. At Mr. Gerulis' request and upon the representation that the project needed to be rebid to reflect the increased cost of materials, Mr. Jacobus sent Mr. Gerulis a set of specifications for the garage. On January 4, 2006, Mr. Gerulis sent the Jacobuses a letter stating that, based on an increase in the cost of labor and materials, the new cost of construction would be $29,540.00; the Jacobuses sent a letter to Mr. Gerulis objecting to the increase to the cost of construction of the garage but the parties were unable to resolve their differences.

On May 1, 2006, Mr. Gerulis and his wife, Sara Felmlee, filed a Petition for Mandatory Injunction against the Jacobuses and other landowners in the subdivision, seeking redress for alleged violations of the subdivision's Declaration of Protective Covenants, Conditions and Restrictions. On February 12, 2007, the Jacobuses answered the Petition and filed a counter-complaint and a third-party complaint against Mr. Gerulis, Ms. Felmlee, and Heartland (collectively hereinafter referred to as the "Defendants"), alleging that they breached the Agreement and Amendment B by refusing to build the garage for $10,200.00; the Defendants filed a joint answer. Mr. Gerulis and Ms. Felmlee thereafter filed a motion for summary judgment; following a hearing, the trial court granted summary judgment to Ms. Felmlee but denied the motion with regard to Mr. Gerulis because there was "a question of material fact as to [his] individual liability."

The matter was heard on March 10, 2009, and, in an order entered on March 23, the trial court found, in part pertinent, that: (1) "the terms of [Amendment B], as they related to the timing for payment and construction of the garage, were vague and ambiguous"; (2) the parties "negotiated and executed a second agreement on or about July 1, 2004, confirming and clarifying the terms of [Amendment B] by adding the following language: 'Within 90 days after closing on the house' the Jacobuses would pay Heartland $10,200 to build the garage"; (3) the June 24 Letter "was supported by the original consideration for the Agreement and Heartland's agreement to extend the time of payment from 30 days to 90 days"; (4) "the Jacobuses' failure to pay Heartland for the construction of the garage within 90 days of closing terminated any obligation Heartland had to construct said garage"; and (5) "[t]he Jacobuses failed to show any individual liability on the part of Mr. Gerulis and failed to carry their burden of piercing the corporate veil." The court dismissed the individual claim against Mr. Gerulis, dismissed the claim against Heartland, and awarded Heartland $3,494.00 in attorneys' fees.[2] The Jacobuses appeal, raising the following issues:

---

[2] With regard to Mr. Gerulis' and Ms. Felmlee's Petition for Mandatory Injunction, the trial court found that "the Chestnut Glen Subdivision Homeowners Association ha[d] been assigned all rights to enforce the restrictive covenants of the development" and that, "[t]herefore, the original claims of violation of the
(continued...)

1.  The trial court erred in determining that the letter stating that Mr. Jacobus must pay $10,200.00 within 90 days was supported by consideration.

2.  The trial court erred in determining that Mr. Gerulis, or in the alternative, Heartland, was not in breach of the contract.

3.  The trial court erred in concluding that Mr. Gerulis was not individually liable.

## II.  Standard of Review

Review of the trial court's findings of fact is *de novo* upon the record accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise.  *See* Tenn. R. App. P. 13(d); *Kaplan v. Bugalla*, 199 S.W.3d 632, 635 (Tenn. 2006).  Review of the trial court's conclusions of law is *de novo* with no presumption of correctness afforded to the trial court's decision.  *See Kaplan*, 199 S.W.3d at 635.

## III.  Analysis

*A.  June 24 Letter*

The Jacobuses assert that the intent of including the language in the June 24 Letter quoted above was to modify Amendment B by adding a time for payment and that such modification was ineffective because it was not supported by separate consideration.[3]  Since the purported modification was ineffective, the Jacobuses contend, the trial court erred in finding them to have breached the time for payment term set forth in the amendment.  The Defendants assert that the trial court properly found that the language in the June 24 Letter was intended to clarify Amendment B, that the letter was supported by the original consideration accompanying Amendment B and was, therefore, enforceable;[4] as a result, the trial court was correct in finding the Jacobuses to be in breach of the time for payment term

---

[2](...continued)
Chestnut Glen restrictive covenants brought by [Mr. Gerulis and Ms. Felmlee] against the Jacobuses [we]re moot."  The underlying facts of this claim are not at issue on appeal.

[3] An agreement to modify an existing contract must be supported by new consideration.  *See Dunlop Tire & Rubber Corp. v. Serv. Merch. Co., Inc.*, 667 S.W.2d 754, 758 (Tenn. Ct. App. 1983).

[4] Where the parties enter into a subsequent agreement that clarifies a previous one, the original consideration suffices for the new agreement.  *See Estate of Hordeski v. First Fed. Sav. and Loan Ass'n of Russell County, Ala.*, 827 S.W.2d 302 (Tenn. Ct. App. 1991).

and in relieving the Defendants of their contractual obligations. While the parties focus on whether the June 24 Letter was supported by consideration separate from that supporting Amendment B, we find it necessary to first determine whether the letter memorialized an agreement between the parties.

In order to be enforceable, a contract "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy. . . ." *Johnson v. Central Nat'l Ins. Co. of Omaha*, 356 S.W.2d 277, 281 (Tenn. 1962). The trial court found as follows:

> That the Jacobuses and Heartland negotiated and executed a second agreement on or about July 1, 2004, confirming and clarifying the terms of the First Amendment by adding the following language: "Within 90 days after closing on the house" the Jacobuses would pay Heartland $10,200 to build the garage.

Other than the quoted language, the trial court did not make specific findings relative to the issues of meeting of the minds or mutual assent; consequently, this Court must look to the record to "determine where the preponderance of the evidence lies." *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002).

The original language of the June 24 Letter, prepared by Mr. Gerulis and signed by him on July 1, evidenced the Defendants' intent to have the Jacobuses pay for construction of the garage within 30 days of closing on the home. On July 2, Mr. Jacobus signed the letter, but only after changing the number of days to pay for the garage from 30 to 90; Mr. Gerulis did not thereafter sign the letter or initial the change. At trial, Mr. Jacobus admitted that the language of the June 24 Letter, as modified by him, reflected that payment for the garage was required within 90 days of closing on the property; he testified, however, that the provision did not "say what [he] wanted it to say" and that, after speaking with Mr. Gerulis, his understanding of the term was that the garage "would be built as soon as [he] could get the second mortgage refinanced and give [Mr. Gerulis] the go-ahead to do it and that [the garage] would be built within 90 days from the time I gave him the go-ahead." Mr. Jacobus stated that he changed the number of days on the June 24 Letter, but did not otherwise change the wording of the letter, because he trusted Mr. Gerulis. Mr. Gerulis testified that he agreed to give the Jacobuses 90 days after closing within which to pay for the construction of the garage, but never agreed that the 90 day period was the period for construction and was to commence after payment was made.

It is clear that the parties had a different intent and understanding relative to the time of performance provision of the June 24 Letter. Specifically, the record shows that Mr. Gerulis initially agreed to payment for the garage within 30 days of closing on the home; Mr.

Jacobus, however, agreed to payment for the garage within 90 days. Mr. Gerulis did not sign the letter after Mr. Jacobus' modification nor did he initial the change. Furthermore, while Mr. Gerulis agreed to the extended time within which the Jacobuses were required to pay for the garage, there is no evidence that the parties agreed that the period - be it 30 or 90 days - was the time for construction of the garage and that the time was to begin to run after payment was made. Mr. Gerulis intended for the time provision to set the time for payment for the garage while Mr. Jacobus testified that he intended for the provision to set the Defendants' time for construction following payment. Thus, the testimony does not support a finding of mutual assent to the terms of the agreement. *See Vatt v. James*, 180 S.W.3d 99 (Tenn. Ct. App. 2005) (finding that the parties did not reach a meeting of the minds in mutual assent to terms intended to change the original contract and that any agreement regarding those changes was unenforceable). Consequently, we find that the trial court's finding that the June 24 Letter clarified Amendment B is contrary to the evidence and we consider the question of whether the amendment as written was breached.

*B. Amendment B*

The Jacobuses assert that the language of Amendment B which states "[a]fter closing, buyer will pay builder $10,200[.00] to *complete* a...garage" required the Defendants to begin construction of the garage and that payment would be made prior to completion; therefore, the Defendants breached Amendment B by failing to begin construction of the garage after closing on the home. The Defendants argue that Amendment B required payment before construction would commence and that the Jacobuses' failure to pay for the construction within a reasonable time relieved the Defendants of their contractual obligations. We find that payment for the garage within 90 days of closing was required prior to commencement of construction and that the Jacobuses' failure to tender payment within that period relieved Defendants of their obligation to construct the garage for $10,200.00.

Contrary to his assertion on appeal that construction of the garage was to commence prior to payment, Mr. Jacobus testified that the garage was to be "built as soon as [he] could get the second mortgage refinanced and give [Mr. Gerulis] the go-ahead to do it." Mr. Jacobus testified that he attempted to secure a loan to finance construction of the garage after the closing, however, two of his applications were declined and a third application was approved with a high interest rate. In order to determine why he was unable to secure an acceptable loan, Mr. Jacobus requested a credit report and discovered that another person's negative credit information was posted on his report; he testified that it took six or seven months to clean up the credit report and almost a year after closing to secure a loan with an acceptable interest rate. We acknowledge that the Jacobuses were not at fault for their inability to secure a loan until a year after closing; however, the effect of the erroneous postings on the credit report and on their ability to secure a loan, while unfortunate, does not

alter the impact of his testimony that he was to give the go-ahead to construct the garage after he had secured financing for it. There is no proof to support the Jacobuses' contention and we find that the Jacobuses were required to pay for the garage prior to construction beginning.

We must next determine, in light of all the circumstances, what a reasonable time for the Jacobuses to tender payment for the garage would be, since Amendment B did not specify a time for payment. "Courts will not enforce a contract that is vague or indefinite or missing essential terms, and will not make a new contract for the parties." *German v. Ford*, 300 S.W.3d 692, 706 (Tenn. Ct. App. 2009) (citing *Four Eights, LLC v. Salem*, 194 S.W.3d 484, 487 (Tenn. Ct. App. 2005)). However, "[w]hen the parties' bargain is sufficiently definite to be a contract, but they have not agreed with respect to a term that is necessary to a determination of their rights and duties, a term which is reasonable may be supplied by the court." *Id*. (citing Restatement (Second) of Contracts § 204 (1981)). Specifically, "'failure of the parties to fix a time or a definite time for performance does not normally defeat a contract.'" *Id*. (quoting *First Nat. Bank of Bluefield v. Clark*, 191 W.Va. 623, 447 S.E.2d 558, 562 (1994)). Instead, a "court will usually imply a term requiring performance within a reasonable time under the circumstances." *Id*. (citing *Minor v. Minor*, 863 S.W.2d 51, 54 (Tenn. Ct. App. 1993)). "'What constitutes a reasonable time within which an act is to be performed where a contract is silent...depends on the subject matter of the contract, the situation of the parties, their intention in what they contemplated at the time the contract was made, and the circumstances attending the performance.'" *Minor*, 863 S.W.2d at 54 (quoting 17A Am.Jur.2d Contracts § 479 (1991)).

Mr. Gerulis testified that the "wholesale" price of $10,200.00 for construction of a garage within 90 days of closing was based on the fact that, for the 90 days following closing, all the equipment and materials needed would be on site and, therefore, he could avoid relocation expenses. He testified that, after 90 days, the equipment was moved off site and he would incur additional labor and relocation expenses to "come back in, scrape the grass off that had grown, and fill and do a normal garage building process." Mr. Gerulis explained that, if Heartland began construction of the garage at the time the Jacobuses were ready, the project would "disrupt the grass, the drainage, everything that's been established for a year or 18 months," which would require additional expense to correct and that, in addition to labor and relocation expenses, the price of materials had increased since Amendment B was executed. Because of the additional expenses that would be incurred at the time the Jacobuses were ready to pay for the garage, he could no longer build the garage at the $10,200.00 cost and that the project needed to be rebid at the "retail" price of $29,540.00.

Walter Sherouse, a general contractor called as a witness by the Jacobuses, testified that he was retained by the Jacobuses to provide an estimate on building a garage at their home. Mr. Sherouse's written proposal, introduced as an exhibit, revealed that the cost of a garage with similar, but not exact, specifications would be $39,489.01. Mr. Sherouse testified that the price of materials had increased since Amendment B was executed but admitted that he still would not have been able to build a garage for $10,200.00 based on the prices at that time. Mr. Sherouse echoed Mr. Gerulis' testimony that having materials and equipment on site reduced the cost of a garage.

Upon a review of the record, we find that 90 days after closing was a reasonable time within which to tender payment for the garage and that the Jacobuses' failure to tender payment was a breach of the agreement.

We next consider whether, in light of the Jacobuses' breach, the Defendants were relieved of their contractual obligation to build the garage for $10,200.00. "[I]n order for a contractual breach to be sufficient to relieve the non-breaching party of its contractual obligations, the initial breach must be 'material.'" *DePasquale v. Chamberlain*, 282 S.W.3d 47, 53 (Tenn. Ct. App. 2008). In determining whether a breach was material, Tennessee courts have adopted the criteria set forth in the Restatement (Second) of Contracts, § 241 (1981), which includes:

> (1) The extent to which the injured party will be deprived of the expected benefit of his contract;
> (2) The extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
> (3) The extent to which the party failing to perform or to offer to perform will suffer forfeiture;
> (4) The likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and
> (5) The extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Id*. at 53-54 (citing *McClain v. Kimbrough Constr. Co., Inc.,* 806 S.W.2d 194, 199 (Tenn. Ct. App. 1990)).

We find that the Jacobuses' breach was material and relieved the Defendants of their obligations under the agreement. As noted above, Mr. Gerulis testified that to construct the garage after the 90 day period following closing would cause labor, relocation, and material expenses, substantially in excess of those contemplated when the cost for construction of the

garage was $10,200.00, to be incurred.  To the extent Defendants would have recognized a profit building the garage at the discounted price, having to build it at such price over a year after the agreement was made and with increased costs would deprive them of the benefit for which they originally bargained.  The proof clearly shows that the Defendants would not be adequately compensated if they were required to construct the garage for $10,200.00 and, indeed, would incur a substantial loss.  Thus, we find that the Defendants are relieved of their obligations under the agreement and the court's dismissal of the action against Heartland is affirmed.

## C.  Individual Liability of Mr. Gerulis

The Jacobuses contend that the trial court erred in finding that Mr. Gerulis was not individually liable "for the contract."  We have determined that the Jacobuses breached the contract and that, as a result, the Defendants were relieved of their obligations under the amendment.  Consequently, the issue regarding Mr. Gerulis' individual liability is moot.

## IV.  Conclusion

For the reasons set forth above, the trial court's judgment is AFFIRMED in part and REVERSED in part.  Costs of this appeal are assessed against the Jacobuses for which execution may issue if necessary.

_____
RICHARD H. DINKINS, JUDGE