IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 19, 2016 Session


GERALDINE ABBOTT, ET AL. v. MARK ABBOTT, ET AL.


Appeal from the Chancery Court for Sevier County
No. 137205     Telford E. Forgety, Jr., Chancellor

_____

No. E2015-01233-COA-R3-CV
Filed  July 20, 2016

_____


This appeal involves a dispute concerning a purported right of first refusal in a deed. In a section titled "Right of First Refusal," the deed provided that the purported holders of the right "shall have a right of first refusal to purchase said property and once a price is agreed upon," the holder will have a certain time period in which to raise the funds to pay the purchase price. The trial court found that the provision was enforceable and imposed a "reasonable time" in which the parties could negotiate and agree upon a price. The sellers appealed. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed
and Remanded**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Douglas R. Beier, Morristown, Tennessee, for the appellant, Mark Abbott.

Bruce Hill, Sevierville, Tennessee, for the appellees, Geraldine Abbott, and Clyde Abbott, Jr.


OPINION


BACKGROUND

The salient facts surrounding this appeal are undisputed by the parties. On January 29, 1996, Clyde H. Abbott, Sr. ("Clyde Sr."), subdivided his real property into four tracts. He executed deeds to each of his four children: Clyde Abbott, Jr. ("Clyde Jr."), Geraldine Abbott ("Geraldine," together with Clyde Jr., "Appellees"), Mark Abbott ("Appellant"), and Angela Abbott Davis.[1] Each of the deeds contained the following language:

> RIGHT OF FIRST REFUSAL: In the event that the grantee herein should decide to sell said property, the other children of Clyde H. Abbott[, Sr.] shall have a right of first refusal to purchase said property and once a price is agreed upon, the grantee shall give the purchasing child a period of one (1) year to raise the money to pay for the property.

Appellees both decided to sell the tracts they owned in May 2013. Both Appellees sent separate letters in May 2013 to the remaining siblings, Mark and Angela, indicating that they wished to sell their respective tract for $200,000.00. The letters requested a response within thirty (30) days indicating acceptance of the $200,000.00 offer to sell or a counteroffer. The letter also stated that the buyer must pay a good faith deposit of $10,000.00 after agreeing on a price.

Through counsel, Appellant responded to Geraldine's letter on June 19, 2013. The letter asserted that Geraldine had no right to request a deposit on the property. Additionally, *inter alia*, counsel for Appellant provided that Appellant would be open to a "more reasonable offer . . . that has a basis in reality."[2] The letter did not include a counter-offer. The record does not include a response by Appellant to Clyde Jr.'s letter.[3]

On July 1, 2013, Appellees filed a joint complaint in the Chancery Court for Sevier County. The suit was filed against Angela's heirs[4] and Appellant. Appellees sought a declaratory judgment requesting that the trial court interpret the deeds, supply any missing

---

[1] The use of first names in this Opinion is not due to lack of respect but, rather, for ease of reference since the parties share a surname.

[2] Appellant's attorney who drafted the letter is not the same attorney who represented him at trial.

[3] The evidence elicited at trial demonstrated that Mark may not have received Clyde Jr.'s letter until several weeks after he received Geraldine's, and thus, the 30-day period in which Mark's response was requested had not expired.

[4] The record indicates that Angela died intestate sometime after her father subdivided the property but before the instant action was commenced. At her death, her parcel passed to her husband and two sons. None of Angela's heirs are parties to this appeal.

terms in the right of first refusal, or ultimately find that the right of first refusal is an unreasonable restraint on alienation of the property.

On April 23, 2015, the trial court conducted a trial on Appellees' complaint. At trial, the only witnesses were Appellees and Appellant. During his testimony, Clyde Jr. confirmed that he wished to sell his tract and sent a letter to Mark offering it for sale. He stated that he decided upon a $200,000.00 sales price by checking local prices of other real estate listings and by speaking with a local real estate agent. He also testified that he "talked to one other person and offered it to them for the same price and they seemed interested," until Clyde Jr. explained that the property was subject to his siblings' right of first refusal pursuant to the deed. He also stated that he had no offers from third parties to purchase the property. Further, Clyde Jr. testified that he believed the right of first refusal and his offer to Mark were reasonable.

Geraldine testified that she also requested a sales price of $200,000.00 and came up with the figure "off the top of my head." She testified that Mark responded via counsel and rejected the $200,000.00 sales price. Geraldine also acknowledged that the letter she sent was identical to the letter Clyde Jr. sent. She stated that she had neither received any offers for her tract nor had she had an appraisal.

The trial court ruled that the right of first refusal was valid and that the parties must negotiate in good faith and attempt to reach an agreement for the price of the land owned by Clyde Jr. and Geraldine. The trial court ordered that the parties had forty-five (45) days to complete any negotiation, which it deemed "reasonable." After forty-five (45) days, according to the trial court's ruling, the right of first refusal would expire. The notice of appeal was filed on August 21, 2015, indicating that Mark was the sole appellant.[5]

## ISSUE PRESENTED

---

[5] The delay in the Court's filing of this Opinion stems from the lack of a final judgment when this appeal originally was transmitted to this Court. The judgment was not final due to two issues, the substance of which is not relevant to this appeal. This Court entered an order on May 6, 2016, directing the parties to address both issues that prevented finality or show cause within fifteen days of why the appeal should not be dismissed for lack of a final judgment. On May 16, 2016, counsel for Appellant requested an extension of an additional fifteen days to respond to this Court's order, which was granted by order entered May 23, 2016.

On June 6, 2016, counsel for Appellant filed a "Notice of Compliance with Show Cause Order." Subsequently, on June 14, 2016, the trial court clerk transmitted to this Court a supplemental record. However, the supplemental record demonstrated that the trial court's new order only resolved one of the two issues preventing finality. Yet again, on June 20, 2016, this Court entered an order directing the parties to remedy the second issue preventing finality or show cause why the appeal should not be dismissed within fifteen days. Finally, on July 1, 2016, the trial court clerk transmitted a second supplement record, which included a final judgment.

This appeal involves one issue raised by Appellant: whether the trial court erred by enforcing the "right of first refusal" provision in the deed and imposing certain restrictions on the parties' future negotiations.

## STANDARD OF REVIEW

This issue involves the interpretation of a contract, which is a question of law. *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 465 (Tenn. 2012). Our review is *de novo* with no presumption of correctness accorded to the decision of the trial court. *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009).

## DISCUSSION

The only issue before us in this case is whether the two deeds belonging to Appellees include an enforceable right of first refusal. Appellant argues that the trial court's imposition of a timeframe in which the parties are required to negotiate a price essentially "eliminates Appellees['] requirement to comply with the terms of the Right of First Refusal because they no longer are required to deal with Appellant fairly and in good faith." Appellant argues that every contract implies a duty of good faith and fair dealing. *See Dick Broadcasting Co. of Tenn. v. Oak Ridge FM* 395 S.W.3d 653 (Tenn. 2013). Although not clear from Appellant's brief, it appears that Appellant is asserting that no conditions outside the four corners of the deed (i.e. time frame for negotiations) should be placed upon the parties while they continue to negotiate. To this end, Appellant is requesting the remedy of specific performance whereby the parties are ordered to continue negotiations until they agree on a sales price. Indeed, Appellant contends that the trial court should have simply found that Appellees failed to negotiate in good faith and dismissed their complaint. According to Appellant, the relief granted by the trial court only requires the Appellees to wait forty-five (45) days, regardless of their conduct, for the right of first refusal to expire. Appellees argue, in contrast, that given that this case has been pending for three years with the parties at an impasse with regard to the sales price of the properties, Appellant's position imposes an interminable ban on them ever selling the property to a third-party. Instead, Appellees assert that Appellant's position is that there can be "no limit on when [the end of negotiations under the Right of First Refusal] must be accomplished."

The trial court's ruling indicates that it found the language of the right of first refusal to be on the "ragged edge of enforceability." Still, it found that it was within its authority to impose a reasonable time—here, forty-five (45) days—within which the parties were to negotiate and reach a price. At the expiration of the forty-five (45) days, Appellants would be free to sell the properties to whomever they wished. Thus, despite the omission of a price or a method by which a price was to be determined, the trial court found the provision enforceable but set a timeframe in which the parties had to negotiate to reach a price. The trial court also noted that enforcing the right of first refusal comported with the late Clyde Abbott, Sr.'s intent that the property remain in the family.

- 4 -

The term "right of first refusal" is commonly used to describe a contractual right to preempt another in the sale of property. ***Riverside Surgery Ctr., LLC v. Methodist Health Sys., Inc.***, 182 S.W.3d 805, 811 (Tenn. Ct. App. Mar. 14, 2005) (citing 3 Corbin on Contracts § 11.3, at 460 (Joseph M. Perillo ed., 1996)). Tennessee law has implicitly recognized two types of provisions conferring a right of first refusal. In ***Riverside Surgery Center***, this Court described the "traditional garden-variety right of first refusal" as one in which the price terms and other conditions are "determined by reference to a third-party offer." ***Id.*** at 812. The court explained:

> The conventional right of first refusal "is subject to an agreed condition precedent, typically the owner's receipt of an offer from a third party and the owner's good-faith decision to accept it." ***Id.*** at 470. At that point, the right of first refusal "ripens" into an option, and the preemptive right holder may exercise his preemptive right to create a contract based on the same terms that the owner is willing to accept from the third party. *See **id.*** at 470–71. However, the triggering of the right of first refusal is dependent on the language of the contract and varies with the facts of the case.

***Id.*** at 811. Stated another way, in the typical case, preemptive purchase rights conferred by a right of first refusal are triggered when the grantor or seller receives an offer from a third party. The seller must then offer the holder of the right the property at the price offered by the third party.

In the instant case, however, the triggering of the right of first refusal is not due to a third party offer, but instead Clyde Jr.'s and Geraldine's independent intent to sell their tracts and unilateral determination of the sales price. In this second type of right of first refusal, the triggering event is the seller's intent to sell. Tennessee cases have previously considered the variety of provisions purportedly conferring this type of right of first refusal. *See **Koella v. McHargue***, 976 S.W.2d 658 (Tenn. Ct. App. 1998) (finding that the plaintiff "complied with his duties and properly offered the property to the [holders of the right of first refusal]" at a price determined without reference to a third party offer); ***Johnson v. Herren***, C.A. No. 88-160-II, 1988 WL 119278, at *4 (Tenn. Ct. App. Nov. 10, 1988), *perm. app. denied* (Tenn. June 26, 1989) ("All that is required to trigger the right of first refusal is for [the seller] to make a sales offer. No third party need accept it."); *see also **Riverside Surgery Center***, 182 S.W.3d 805 (upholding a right of first refusal triggered by the seller's independent intent to sale not triggered by a third party offer). In addition, at least one Tennessee court has sought guidance from federal law in addressing this second type of a right of first refusal, deeming it "closely akin" to a "right of first offer." *See **Riverside Surgery Center***, 182 S.W.3d at 812

(citing *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 139 (3d Cir. 2001)).

The *Riverside Surgery Center* Court explained that a "right of first offer" entitles the holder of the right to receive the first offer to purchase the property, where the sale price and other terms are provided for "in advance in the agreement." *Riverside Surgery Center*, 182 S.W.3d at 812 (citing *Gleason*, 243 F.3d at 139). For example, in *Riverside Surgery Center*, the contract containing the right of first refusal did not determine price based upon a third-party offer, but instead specified that the price of an interest in the subject company was determined by a complicated calculation involving the proportional interest at issue, the "net book value" of the subject company, the appraised value of company real property, and the subject company's liabilities. *Riverside Surgery Center*, 182 S.W.3d at 808. According to the contract, the owner wishing to sell its interest in the property was required to provide notice to the holders of the right of first refusal, who were provided the opportunity to purchase the property based upon the specified calculation. *Id.*

The right of first refusal in this case presents a quandary for this Court because it does not squarely fit within either type of Right of First Refusal previously recognized by Tennessee courts. While the language in the instant case appears more akin to the second variety of rights of first refusal in which the price for the disputed property is not determined by a third-party offer, the language of the right of first refusal in the case-at-bar does not contain a specified price or manner for determining a specific price. Instead, the provision provides, *inter alia*, that the other children shall have the right of first refusal to purchase the property "once a price is agreed upon." *See Universal Scrap Metals, Inc. v. J. Sandman & Sons, Inc.*, 786 N.E.2d 574, 579 (Ill. Ct. App. 2003) (concluding that if the right of first refusal was intended to be exercised on the terms of a third-party offer, the phrase "under mutually agreed upon conditions" would be superfluous). Our inquiry then becomes whether a right of first refusal provision lacking the price or method to determine a price, and not premised on a third-party offer, is enforceable where it requires that a price must be "agreed upon" by the parties.

For a contract to be enforceable, the parties must agree on the material terms. *Gurley v. King¸* 183 S.W.3d 30, 35 (Tenn. Ct. App. 2005). In the case of *United American Bank of Memphis v. Walker*, No. 3, 1986 WL 11250 (Tenn. Ct. App. 1986), this Court stated: "In order for a contract to be binding it must spell out the obligation of the parties with sufficient definiteness that it can be performed. All the essential terms of a contract must be finally and definitely settled. None must be left to determination, by future negotiations." *Id.* at *2. This Court has repeatedly held that price is typically an essential term in a sales or services contract. *See id.*; *see also Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 197 (Tenn. 2001) (considering whether the contract contained a sufficiently definite price to be enforceable); *Tetra Tech, Inc. v. Performa Entm't Real Estate, Inc.*, No. W2007-02244-COA-R3-CV, 2008 WL 4457061, at *5 (Tenn. Ct. App. Oct. 3, 2008) ("A contract may not

be enforceable where an essential element, such as price or compensation terms, is determined to be indefinite."); ***Four Eights, LLC v. Salem***, 194 S.W.3d 484, 487 (Tenn. Ct. App. 2005) (noting that an option to purchase was not definite enough to enforce by specific performance where the parties could not agree to a price) (citing 71 Am. Jur. 2d *Specific Performance* § 47); ***Castelli v. Lien***, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995) (refusing to enforce a contract because there were no sufficiently definite terms concerning the cost of performance). As this court explained in refusing to enforce a promissory note and guaranty:

> It is a fundamental rule of law that an alleged contract which is so vague, indefinite and uncertain as to place the meaning and intent of the parties in the realm of speculation is void and unenforceable. Consequently where substantial and necessary terms are specifically left open for future negotiations, the purported contract is fatally defective. On the other hand, the law does not favor the destruction of contracts because of indefiniteness and if the terms can be reasonably ascertained in a manner prescribed in the writing, the contract will be enforced.
>
> Such a provision provides no standard for ascertaining the price or any other conditions of the sale and is, in our opinion, fatally uncertain and unenforceable in any form of action.

***Walker***, 1986 WL 11250, at *2 (quoting ***King v. Dalton Motors, Inc.***, 109 N.W.2d 51 (Minn. 1961)). Courts are reluctant to enforce contracts that leave material terms open for further negotiations. ***Four Eights, LLC v. Salem***, 194 S.W.3d 484, 487 (Tenn. Ct. App. 2005). Still, Tennessee courts do "not favor the destruction of contracts because of indefiniteness and if the terms can be reasonably ascertained in a manner prescribed in the writing, the contract will be enforced." ***Id.***

In this case, we must determine whether the material term of price is a fatal omission to the enforcement of the right of first refusal. "[W]here price is the unspecified material term, courts have enforced contracts that call for the price to be set by vague but ascertainable standards, such as 'market price' or 'prevailing rate.'" ***Huber v. Calloway***, No. M2005-00897-COA-R3-CV, 2007 WL 2089753, at *5 (Tenn. Ct. App. Jul. 12, 2007). As stated by our sister court in ***Gleason v. Norwest Mortgage, Inc.*** 243 F.3d 130 (3d Cir. 2001)[6]

---

[6] ***Gleason*** was abrogated on a different ground ***Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union***

(cited by this Court with approval in ***Riverside Surgery Center***), when there is no third party offer and no method for determining a price more than mere negotiation, "this naked right of "first offer" can have no legal significance or preemptive right whatsoever. Without a price, terms, or conditions, a right of first refusal creates a dormant right of preemption, the right to receive an offer before others do, but based on third party information." ***Id.*** at 139.[7] Courts cannot enforce "agreements to agree" that leave the element of price to be determined by the parties at a future date after negotiation. ***Four Eights***, 194 S.W.3d at 486; *see also* ***Portnoy v. Brown***, 430 Pa. 401, 243 A.2d 444, 447 (1968) ("[P]rice is an essential ingredient of every contract for the transfer of property and must be sufficiently definite and certain or capable of being ascertained from the contract between the parties."); Restatement (Second) of Contracts § 33(1), (3) (1981); *see also* I Richard A. Lord, Williston on Contracts § 4.18 (1999).

Although not cited by either party in their briefs, the ***Four Eights*** case presents a situation highly analogous to the case-at-bar. ***Four Eights***, 194 S.W.3d 484. In ***Four Eights***, the plaintiff lessor filed suit against the defendant tenant claiming that he was unlawfully holding over after expiration of the lease term. ***Id.*** at 485. The tenant argued that he had attempted to exercise an option to purchase the property pursuant to the lease agreement and requested enforcement of the option. The option provided that the sales price would be its "fair market value," but also stated that "Fair Market Value must be determined by the Lessor and Lessee, negotiating in good faith . . . ." ***Id.*** at 486. The trial court found that the parties had redefined "fair market value" to be something they would have to negotiate, and thus, the document did not provide any way to ascertain the price. On appeal, this Court affirmed the trial court's decision finding the option unenforceable because the essential term of price was not sufficiently definite. We opined that, because the price had to be negotiated, the option constituted an unenforceable "agreement to agree." ***Id.*** In addition, we noted that without an ascertainable price, specific performance was an inappropriate remedy:

> The general rule that a contract is not sufficiently certain and definite to be specifically enforced if some of its essential terms are left for the future determination or agreement of the parties themselves is usually applied if the contract price is left to be determined by the parties. **Accordingly, an option to purchase contained in a lease, at a price to be subsequently agreed upon by the parties, is too indefinite to be specifically**

---

*of Operating Engineers & Participating Employers*, 134 S. Ct. 773, 187 L. Ed. 2d 669 (2014).

[7] Our holding is limited to our inability to order enforcement of the right of first refusal provision with reference to the facts presented to this Court. This holding should not be construed as preventing enforcement in another scenario. To that end, we express no Opinion as to similarly worded provisions in the context of third-party offers.

**enforceable.**

*Id.* at 487 (emphasis added) (quoting 71 Am.Jur.2d *Specific Performance* § 47 (2001)). We then affirmed the trial court's decision to deny specific performance based on the indefiniteness of the option.

The record indicates that the price of the properties at issue remained a point of contention between the parties. The provision in this case merely provides that the price will be "agreed upon," presumably between the seller of the property and the holder of the right. It does not, however, provide any method for how the parties should ascertain such price. Furthermore, although the provision at issue appears similar to other provisions analyzed by Tennessee courts wherein a grantor or seller is charged with setting the sales price, such provisions charging the seller with unilaterally determining a price have been interpreted as providing a mechanism for setting the sales price. *E.g.*, *Koella v. McHargue*, 976 S.W.2d 658, 660 (Tenn. Ct. App. 1998) (upholding enforcement of provision stating that "[Seller] shall give written notice to [holder of the right] at what price said property shall be placed on the open market . . . ."). These provisions differ from the one in the case-at-bar wherein neither party is tasked with stating a price and instead must arrive at a mutually agreed-upon price through future negotiations. Like the unascertainable price in the option in *Four Eights*, the price in this case, at this time, is presently unascertainable. In accord with the reasoning presented by the Court in *Four Eights*, we conclude that the provision in the instant case constitutes an unenforceable "agreement to agree." *See also Four Eights*, 194 S.W.3d at 486. The provision in this case, coupled with the parties' inability to engage in a successful colloquy to set a sale price, highlights the logic served by the rules governing the unenforceability of agreements to agree. Here, it appears that the trial court endeavored to fashion an equitable remedy that would satisfy both parties and further Clyde Sr.'s intent. However, as the deeds merely contain a stipulation mandating an agreement to agree, the trial court's fair-minded efforts led only to additional disputes regarding the fair price of the property, the time allowed for negotiation, and the appropriate conduct of either party. Because of the uncertainty implicit in these agreements, agreements to agree are simply not enforceable in Tennessee courts. Similarly, because the provision omits a sales price or a method to determine a sales price, the trial court erred in finding that the provision was enforceable.

In addition, the remedy requested by Appellant in this case constitutes specific enforcement, not monetary damages. Specific performance is an equitable remedy which is not available as a matter of right, but is discretionary with the trial court depending on the facts of the case. *Shuptrine v. Quinn*, 597 S.W.2d 728, 730 (Tenn. 1979); *GRW Enters., Inc. v. Davis*, 797 S.W.2d 606, 614 (Tenn. Ct. App. 1990). Appellant's appeal to this Court requests a dismissal of Appellees' complaint so that the parties are essentially forced into (likely perpetual) negotiations. If the right of first refusal provision had a mechanism by

which to determine the sales price for the properties at issue, a court might be able to order specific performance of the provision. However, it is well settled that a contract, in order to be specifically enforced, must be complete, specific, and certain. ***Oliver v. Upton***, No. 01A01-9705-CH-00197, 1998 WL 151388, at *2 (Tenn. Ct. App. Apr. 3, 1998); *see also* ***Folsom v. Harr***, 218 Ill. 369, 372, 75 N.E. 987, 988 (1905) (holding that specific performance was not appropriate where the contract "fixed no price and fixed no mode of determining the price" for the property). As previously stated by this Court,

> As the Trial Court found, if the parties herein had simply agreed that the property could be purchased for fair market value, then the price could have been determined by the Court according to the common usage of that term. Where the parties went on to require, however, subsequent agreement after negotiation, the price was rendered too indefinite to be enforced by specific performance.

***Four Eights***, 194 S.W.3d at 487–88; 71 Am.Jur.2d *Specific Performance* § 47 (2001) (cited with approval in ***Four Eights***); *see also* ***Duke v. Whatley***, 580 So. 2d 1267, 1274–75 (Miss. 1991) (affirming trial court's denial of specific performance because first-refusal did not specifically provide a mechanism for determining holder's purchase price); ***Hood v. Hawkins***, 478 A.2d 181, 186–87 (R.I. 1984) (same); ***Rolfs v. Mason***, 119 S.E.2d 238, 242 (Va. 1961) (same); 25 *Williston on Contracts* § 67:85 (4th ed.) ("A right of first refusal is not subject to specific performance where it is too indefinite, as where no price, or formula for calculating the price, has been agreed to."). In the instant case, the trial court's decision amounted to specific enforcement of an "agreement to agree," which as discussed above, is not appropriate. Accordingly, we reverse the trial court's decision finding the right of first refusal as enforceable and its decision ordering the parties to engage in negotiations.

## CONCLUSION

The judgment of the trial court is reversed. This cause is remanded to the trial court with instructions to enter an order granting Appellees' petition for declaratory judgment and declaring the right of first refusal unenforceable, and for all further proceedings as are necessary and are consistent with this Opinion. Costs of this appeal are taxed one-half to Appellant Mark Abbott, and his surety, and one-half to Appellees Clyde Abbott, Jr., and Geraldine Abbott, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE